WILLIAM H. LORENZEN et al., Appellees, v. SOLOMON LANGMAN et al., Appellants.

**VENDOR AND PURCHASER:** Rescission—Mutual Mistake. Mutual
1   mistake of a vendor and a purchaser of land as to the description thereof, its quantity, location, and title, furnishes ample grounds for an equitable decree of rescission, and it is no answer that the vendor offers the purchaser something else "just as good."

**VENDOR AND PURCHASER:** Rescission—Innocent False Representa-
2   tions. False representations, when material and justifiably relied on, furnish ample grounds for an equitable decree of rescission, even though it be conceded that the representations were innocently made.

Headnote 1: 39 Cyc. p. 1249.  Headnote 2:  39 Cyc. p. 1261.

Headnote 1:  27 R. C. L. 645.  Headnote 2:  14 L. R. A. (N. S.) 1210; 38 L. R. A. (N. S.) 306; 27 R. C. L. 375.

*Appeal from Scott District Court.*—WILLIAM W. SCOTT, Judge.

### DECEMBER 13, 1927,

Action to rescind a written contract of purchase and the deed conveying certain real estate, on the ground of mistake and fraud. The defendants admitted that the deed erroneously described the real estate covered in the contract, but said that the error of description was due to the scrivener, and asks for reformation. A decree of rescission was entered, as prayed, and there was awarded to plaintiff certain compensation for improvements placed on the property, and for taxes and commission paid. A cross-petition filed by the defendants against one Catherine Cahail and husband was dismissed, with costs against the defendants. The defendants appeal.—*Affirmed.*

*Hoersch & Hoersch,* for appellants.

*Bush & Bush,* for appellees.

DE GRAFF, J.—The defendant Albert Langman constructed a house, which was purchased with the lot by the plaintiffs in 1924. The lot was owned by Solomon Langman, father of Albert. The record before us is replete with drawings, maps, and blue prints, but a statement of the facts is sufficient to call into operation the applicable legal principles decisive of this cause.

1. VENDOR AND PURCHASER: rescission: mutual mistake.

This parcel of real estate had, according to representation, specific boundary lines. Plaintiffs had a right to receive just what they contracted for; and if there was a mistake as to the subject-matter, then there was no meeting of minds, and no contract. Under such circumstances, equity will declare a rescission. *Clapp v. Greenlee,* 100 Iowa 586. The plaintiffs had the right to have the particular parcel of land purchased. The defendants had no right to offer or substitute another tract, "even though of equal value." *Selby v. Matson,* 137 Iowa 97.

The instant case is not one of mutual mistake. The contract of purchase was induced by fraudulent representation, viewed either in law or equity. Both the vendor Langman and

2. VENDOR AND
PURCHASER:
rescission: inno-
cent false repre-
sentations.

his agents in the negotiations made material misrepresentations as to the description of the land, its quantity, location, and the title in the vendor. The owner of land is conclusively presumed to know the boundaries of his own land. *Tott v. Duggan,* 199 Iowa 238; *Shuttlefield v. Neil,* 163 Iowa 470. Furthermore, a purchaser is entitled to rely upon definite representations as to location, boundaries, title, etc., and is not bound to consult records or plats, or to employ a surveyor to ascertain the true boundaries or extent of the land.

False representations intentionally and knowingly made are fraudulent, and even though innocently and unwittingly made, if they deceive another to his injury, are fraudulent in equity. *Scienter* is not an essential element to constitute fraud in equity. It is elementary that, to entitle a party to reformation of a contract, he must prove the mutuality of the mistake by clear, convincing, and satisfactory evidence; and it is sufficient to state that the instant record affords the defendants no ground whatsoever to have the contract in question reformed.

Plaintiffs believed, and it was represented by the defendants, that the lot purchased was 40x140 feet, and that the lot had a front yard, and faced a city street known as Fair Avenue. Defendants represented, at the time of the purchase, that there was a driveway on the north side of the house; and when Mrs. Lorenzen, a little later, wanted the coal bin and fruit shelf put in the cellar "in the northwest corner," she was told that the drive was on the south side of the house, and that it was "a good ten feet wide."

It further appears that one Catherine Cahail contracted to buy from the Langmans the house south of the Lorenzen property, and that Mrs. Cahail was told that she had "a good ten feet" north of her house for a driveway. In other words, the defendants sold the Cahails a lot which included part sold to Lorenzens. See *Cahail v. Langman,* 204 Iowa 1011. The cross-petition of the defendants against the Cahails was properly dismissed. *Eller v. Newell,* 159 Iowa 711.

The house purchased by the Lorenzens did not front upon

a regular and lawful street of the city of Davenport. The alleged street did not belong to the city, and the city refused to exercise jurisdiction over it. Albert Langman, when he built the house and sold this property to the Lorenzens, knew that his father had purchased in 1914 from one Elizabeth Wallerab a certain tract, including this particular parcel, as unplatted acreage, and that his father still owned it; and Albert testified that he acquired title to most of this Langman Addition from his father, sometime after the instant contract and deed were made, and that his father did not convey to him any part of Fair Avenue extended, but retained his rights to Fair Avenue extended.

There can be no serious question that the plaintiffs would not have executed this contract if they had known of the falsity of the representations made by the Langmans and their agents, to wit: that Fair Avenue in front of the house was a city street; that a ten-foot driveway existed south of the lot; and that the lot extended from the front walk on the west to the alley on the east. Plaintiffs were shown, and thought they were buying, a specific and definite parcel of ground. The record shows that the greatest distance between the Langman and Cahail houses is 14.26 feet, and consequently at no place is there room between the houses for two ten-foot driveways.

The undisputed evidence discloses that the Cahails were sold their house with a ten-foot driveway on the north side of the house, and this ten-foot drive would necessarily include the south 5.74 feet of the land plaintiffs purchased. The defendants need the legerdemain of some Houdini, rather than a court of equity, to solve the difficulty suggested by the instant record.

Enough has been indicated in this opinion determinative of this appeal. The decree entered by the district court is fully sustained by the law and the facts. It is—*Affirmed.*

EVANS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.