JACK O. WYCKOFF, appellant, v. THE A & J HOME BENEVOLENT ASSOCIATION of Creston, Iowa, et al., appellees.

No. 50786.

(Reported in 119 N.W.2d 126)

654

December 11, 1962.

Paul .V. Nichols, of Shenandoah, and Mullin & Mullin, of Creston, for appellant.

Smith, Peterson, Beckman & Willson, of Council Bluffs, and James W. Newell, of Creston, for appellees.

Moore, J.—This is an action by Jack O. Wyckoff as beneficiary against defendants for certain death benefits claimed under a membership certificate issued in the name of his uncle, Arthur Wyckoff. The defense alleged fraud in the application for membership. Defendants counterclaimed for cancellation of the certificate. The trial court denied plaintiff's claim, approved defendants' return of $23.50 to plaintiff, ordered the certificate cancelled and entered judgment against plaintiff for costs. He has appealed.

The cause was tried in equity and is here triable de novo. Rule 334, Rules of Civil Procedure. When considering the credi-

bility of witnesses, this court gives weight to the fact findings of the trial court but we are not bound by them. Rule 344f(7).

From March 1955 and all times pertinent herein R. H. Jones and Opal P. Jones, his wife, owned and operated a business under the trade name of The A & J Home Benevolent Association of Creston, Iowa. He was called treasurer, she secretary. The plan of the association was to enroll members and place them according to age in clubs or units of 1200 members each. A signed application for membership was required which stated, among other things, applicant's age, that he was in good health and the name of the beneficiary. Payment of $6.00 was required with the application. When a member of the club or unit died the other members were notified and each required to pay $1.25. As that amount was paid $1.00 was held for payment to the named beneficiary at the expiration of sixty days. If a member failed to pay within that period his membership was cancelled.

From 1955 until a short time before trial Louis Harms acted as an enroller for the association. He solicited and obtained applications for membership and received $4.00 of the $6.00 initial fee. Prior to August 1959 Harms had enrolled plaintiff, his wife and two children. He informed plaintiff other relatives could be enrolled in the association. A short time later being about August 12, 1959, plaintiff signed an application seeking to enroll his uncle, Arthur Wyckoff, in the association. In the application, taken by Harms, plaintiff recited his uncle, Arthur Wyckoff, was age 62, in good health and resided at Clarinda. Plaintiff designated as beneficiary therein "all to Jack Wyckoff." Upon receipt of this application defendants issued a membership certificate to Arthur Wyckoff. All mail was sent to Clarinda. Plaintiff paid 14 assessments for a total of $17.50 before his uncle's death at Bedford on February 1, 1960.

After his uncle's death plaintiff filed a death certificate with defendants. Notice of assessment due to Arthur Wyckoff's death resulted in protests by several members of the unit. Defendants then learned Arthur had been a helpless bedfast paralytic for almost four years before his death. His daughter, Mrs. Rowena Shimer, and others had given him constant care

during that period. He was unable to walk, took his meals in bed, was shaved by others and required help with his toilet needs. He was unable to care for himself in any way. The evidence shows plaintiff visited his uncle at Bedford a few days before signing the application. He had made two or three visits to see him on prior occasions. Plaintiff was fully aware of his uncle's physical condition at the time he signed the application.

Defendants, after the complaints, demanded proof that Arthur was in good health when the application was signed and filed. Plaintiff then requested Mrs. Shimer to sign such a statement. He offered her two or three hundred dollars from the proceeds for such a statement. She refused.

Harms testified he had been employed as a salesman for the association from September 4, 1956, until his employment was terminated on April 16, 1960, that he had never seen Arthur Wyckoff during his lifetime, plaintiff furnished the information written in the application and he sent the application to defendants after it was signed by plaintiff. On cross-examination he said Jack's address was put in the application because he was going to pay the bills. His cross-examination included the following:

"Q. At the time you signed Mr. Arthur Wyckoff in this association, you thought it was the proper thing to do, didn't you? A. That is right, or I wouldn't have done it.

"Q. And at that time, didn't he [Jack] tell you that his uncle had some difficulty, that he had a stroke or something of that kind? A. Yes, I think he did. He said he was getting along better.

"Q. He said he was getting along better. Wasn't there something said about whether or not he could get to the table? A. Yes. I asked him what kind of shape he was in, and he said, 'He is eating three meals a day'."

Plaintiff testified:

"Q. What conversation did you have with Mr. Harms, the agent for this company, before you enrolled your uncle in the association? A. I told him that my uncle was sick, and he said, 'He is able to get around a little?' And I said they helped him to the table part of the time."

The trial court decided: (1) Harms was not defendants' agent, (2) statements made by Harms were not binding on defendants, (3) plaintiff made a fraudulent application for decedent's membership.

With the trial court's first two findings we do not agree. In addition to the showing of Harms' work for the defendants and Harms' testimony, Opal P. Jones testified the enrollers were employed to go out and work in the field. The relationship of principal and agent is not dependent upon express agreement between the parties. It may be implied from either words or conduct of the parties, depending on the circumstances of the case. Kann v. Fish, 209 Iowa 184, 191, 224 N.W. 531, 534; Greenlease-Lied Motors v. Sadler, 216 Iowa 302, 307, 249 N.W. 383, 386; Popejoy v. Eastburn, 241 Iowa 747, 754, 41 N.W.2d 764, 768; Winchester v. Sipp, 252 Iowa 156, 160, 106 N.W.2d 55, 57.

Plaintiff contends the knowledge of Harms that Arthur Wyckoff had been ill became knowledge of defendants and his act in taking the application thereafter was binding on defendants. The evidence permits such a conclusion but we find no comfort to plaintiff therefrom for the fraud committed. The general rule is the knowledge of an agent, gained in the performance of his authorized work or duty and within its scope and reasonable connection, is the knowledge of the one for whom he is acting. 3 Am. Jur.2d, Agency, sections 273–276; Restatement of the Law, Agency, sections 268–282; Watt v. German Sav. Bk., 183 Iowa 346, 364, 165 N.W. 897, 902; Laird & Keehner v. McCord, 196 Iowa 972, 976, 977, 195 N.W. 517, 519; Huff v. United Van Lines, Inc., 238 Iowa 529, 542, 28 N.W.2d 793, 799.

We agree with the court's third finding. The taking and filing of the application by Harms was obtained by the fraudulent misrepresentations and concealment of plaintiff.

Fraud cannot be presumed but must be affirmatively proved by the one who relies on it either for the purpose of defense or attack. It must be established by a preponderance of the evidence by proof that is clear, satisfactory and convincing —such as to overcome the presumption in favor of fair dealing.

37 C. J. S., Fraud, sections 94, 114; Klatt v. First State Bank of Calmar, 206 Iowa 252, 220 N.W. 318; Dallas Real Estate Co. v. Groves, 228 Iowa 1232, 289 N.W. 900, 292 N.W. 152; Johanik v. Des Moines Drug Co., 240 Iowa 310, 36 N.W.2d 370; Luebke v. Freimuth, 248 Iowa 58, 78 N.W.2d 473.

The elements necessary to constitute actionable fraud are stated by this court in the case of Reinertson v. Consolidated Chem. Prod. Co., 205 Iowa 417, 420, 216 N.W. 68, 69, as follows:

"The elements of a cause of action for fraud, though they may be stated in more condensed form (Smith v. Packard & Co., 152 Iowa 1, 5, 130 N.W. 1076), are: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, (7) resulting injury and damage."

See also Gipp v. Lynch, 226 Iowa 1020, 1026, 285 N.W. 659, 662; Community Savings Bank v. Gaughen, 228 Iowa 18, 28, 289 N.W. 727, 731; Carey v. Drake, 241 Iowa 1340, 44 N.W.2d 357; Brickman v. Toriello, 242 Iowa 677, 46 N.W.2d 565; Lamasters v. Springer, 251 Iowa 69, 99 N.W.2d 300.

Fraud is of various kinds and may be committed by a suppression of the truth as well as by the suggestion of falsehood. 23 Am. Jur., Fraud and Deceit, section 76, page 850; 37 C. J. S., Fraud, section 1, page 204; Popejoy v. Eastburn, 241 Iowa 747, 41 N.W.2d 764, and citations.

The evidence in this case clearly establishes the necessary elements of fraud by plaintiff. He carefully concealed and suppressed the truth in addition to his false statements. In fraud actions, courts are reluctant to permit a cheater to profit by his own wrongdoing. Griffiths v. Brooks, 227 Iowa 966, 289 N.W. 715. To permit plaintiff to recover would do violence to this rule. This case is—Affirmed.

All JUSTICES concur except PETERSON, J., who takes no part.