WILDEN CLINIC, INC., a/k/a Lyon
Street Corp., Appellant,

v.

CITY OF DES MOINES, Iowa, et
al., Appellees.

No. 56098.

Supreme Court of Iowa.

May 21, 1975.

Harry W. Haskins of Hansen, Wheatcraft & McClintock, Des Moines, for appellant.

Philip T. Riley, Corp. Counsel, M. A. Iverson, Des Moines, for appellees.

Heard before MOORE, C. J., and MASON, LeGRAND, REES and McCORMICK, JJ.

MASON, Justice.

Wilden Clinic, Inc. appeals from the trial court's decree dismissing its petition and assessing costs following trial of an equitable action brought as a result of plaintiff's purchase of a tract of land at $1.55 per square foot from defendant, City of Des Moines, described in the record as the east one half of parcel C–Z which is a portion of the River Hills Urban Renewal Project.

Plaintiff seeks relief in division 1 of its petition on the theory of a mutual mistake of a material fact, alleging the city council at the time it adopted the fair market value of parcel C–Z at $1.55 per square foot mistakenly based such price upon an appraisal for a nonexistent use of the parcel as a transient housing facility. Plaintiff prayed the contract and deed for the purchase of the parcel be reformed to reflect the true intent of the parties and for money damages.

In division 2, as amended, plaintiff alleged defendant and its urban renewal board and department fraudulently misrepresented the fact the parcel involved could be used as a transient housing facility or in the alternative fraudulently concealed the fact the parcel could not be used for such purpose and plaintiff was required to bid against other developers at a price consistent with a transient housing facility use.

Under both alternatives plaintiff asked damages of $58,856.06, the difference between $1.00 per square foot and $1.55 per square foot.

The basic controversy centers upon whether the City should have notified Wil-

den that two other parties interested in this parcel of land were not going to offer bids since the particular land uses proposed by these parties had not been consented to by the neighboring landowners.

The events culminating in this lawsuit were initiated when the state of Iowa informed Wilden in 1965 that its land was needed for State House grounds expansion. As a result of this plaintiff began searching for a new site for its osteopathic hospital. Mr. Charles McLaughlin, business manager for Wilden, had virtually complete charge of the search for the new site. In early 1965 McLaughlin contacted Mr. Vern McKinley, real estate officer of the Urban Renewal Department, concerning purchase of land from the department. McLaughlin explained at trial the hospital administration wished to maintain its operation in eastern Des Moines as that was the area it traditionally had served.

In June-July 1965, Wilden offered $.50 per square foot and in August of the same year, $1.00 was offered. Both propositions were rejected.

In the early 1960's, parcel C–Z had been appraised at $2.00 per square foot. Due to Wilden's interest in purchasing this land, Walter J. Potts, Jr., of the Iowa Appraisal and Research Corporation was hired to reappraise parcel C–Z in connection with various land uses. He submitted a report August 4, 1965, which concluded: (1) the land would be worth $1.00 per square foot or $214,022.00 total if used by Wilden as a hospital site; (2) if 75,000 square feet were used as a transient housing (hotel-motel) site, the land value would be $1.55 per square foot, or $116,250 total; and (3) if the City were to retain the land for three years, it could be subdivided into retail sites valued at $1.45 per square foot, or $310,331.90 total.

It appears of record Hyatt Corporation and Sinclair Oil Company became interested in purchasing parcel C–Z in conjunction with the construction of a motor inn-service station site. In fact, McLaughlin was shown a drawing of a "chalet" type motel complex and was asked how he would like it for a neighbor. In any event, it was necessary to acquire the consent of the other developers in River Hills before such a complex could be constructed. However, such consent was never obtained.

January 25, 1966, McLaughlin appeared before the Urban Renewal Board and offered $1.55 per square foot. The board advised him this was premature, that it would not be prudent for Wilden to submit its bid at that time as the other interested parties would then know Wilden's bid. At this meeting it was decided February 22 would be the deadline for submitting bids.

February 22 Wilden submitted its final bid for $1.55. Mr. McLaughlin testified the $1.00 bid was raised due to the fact Wilden was in competition to acquire the land and was also aware $1.55 was the firm set price. As of this date, however, Wilden was in competition with no one for the purchase of the tract since consent for the motel-service station use had not been obtained. It is undisputed the hospital did not become aware of this until late 1967. McLaughlin testified had he known consent had not been obtained, Wilden would not have offered the $1.55 price.

March 14, 1966, the Des Moines city council set the official price of the parcel at $1.55 per square foot and accepted plaintiff's bid. Wilden took title the following January and moved into its new building in the latter part of that year.

It was in dispute whether the city council was aware consent had not been obtained, but the Urban Renewal Board did have such knowledge, when, on February 7, 1966, it submitted its resolution to the council. There was testimony to the effect the council acted more or less as a "rubber stamp" as to these board resolutions.

The trial transcript indicates this urban renewal plan was filed March 23, 1966 with the Polk County recorder. Later the other landowners in River Hills agreed to the service station use, which was filed Septem-

ber 19. Furthermore, defendant contends all plan changes were conducted in open council meetings which became part of the public records of the Des Moines City Clerk.

The trial court found the Urban Renewal Board at all times knew the status of parcel C–Z, which knowledge was imputable to the City. Since plaintiff failed to sustain its burden of proving the city council did not have knowledge of the failure to obtain consent for the additional land uses, there was no mutual mistake between the parties (justifying reformation of the contract).

The court further found no active misrepresentation or any existence of a duty on the part of defendant "to seek out interested persons, plaintiff or others, and spontaneously communicate any and all facts that might interest a prospective purchaser." The court reasoned this was an arms-length transaction where mere silence as to material facts discoverable by the other party did not constitute actionable fraud. There was neither a refusal to give information nor concealment of facts.

Finally, the trial court opined plaintiff could never have acquired the real estate for $1.00 per square foot due to the city council's prior refusal of that offer.

Plaintiff states its appeal presents two issues for review: (1) whether the trial court erred in failing to find a mutual mistake of a material fact between the parties; and (2) whether the trial court erred in failing to find a fraudulent misrepresentation or concealment of a material fact by defendant.

■ In equity matters, such as this, where our review is de novo, rule 334, Rules of Civil Procedure, it is our responsibility to review the facts as well as the law and determine from the credible evidence rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the trial proceedings. While weight will be given to findings of the trial court, this court will not abdicate its function as triers de novo on appeal. Mulford v. City of Iowa Falls, 221 N.W.2d 261, 267 (Iowa 1974).

I. Plaintiff seeks reformation of the land sale contract—not rescission—on the theory there was mutual mistake of the parties as to the consent issue.

■ This court has recognized that the proper relief for a mutual mistake of a material fact in a written instrument is reformation of the instrument to reflect the true intent of the contracting parties. However, one who contends a writing does not express the real agreement between the parties or who seeks reformation of a contract has the burden of establishing his contentions by clear, satisfactory and convincing proof. Akkerman v. Gersema, 260 Iowa 432, 438–439, 149 N.W.2d 856, 859–860.

Mistake is defined in Restatement, Contracts, section 500, to mean "a state of mind that is not in accord with the facts."

The author of 13 Williston on Contracts, (Third Ed. Jaeger), section 1535, tells us:

"Mistake, as the word is used in contract law, is a mental attitude which when coupled with an act having legal significance, such as the execution of a contract, itself acquires legal consequences.

" *  *  *

"But where the mistake is of so fundamental a character, that the minds of the parties have never, in fact, met; or where an unconscionable advantage has been gained, by mere mistake or misapprehension; and there was no *gross negligence* on the part of the plaintiff, either in falling into error, or in not sooner claiming redress; and no intervening rights have accrued; and the parties may still be placed *in statu quo*; equity will interfere, in its discretion, in order to prevent intolerable injustice. *  *  *

" *  *  *

"A mutual mistake, in equity, is one that is common to all the parties to the written instrument. * * * the court exercises

the power of reformation where the mistake is common to both parties and by reason of it each has done what neither intended." (Emphasis in the original).

■ Thus, under the doctrine of mutual mistake, the mistake must be both "mutual" and "material." In other words, if the mistake is as to a collateral matter or is unilateral, *reformation*, as opposed to rescission, is not available. "A mistake on one side may be ground for rescinding, but not for reforming, a contract." Hearne v. N. E. Mutual Marine Ins. Co., 87 U.S. 488, 491, 20 Wall. 488, 22 L.Ed. 395, 397. See also 13 Williston, section 1573.

The general rules concerning the doctrine of mutual mistake are summarized in this fashion in 17 Am.Jur.2d, Contracts, section 143, page 490:

"The formation of a binding contract may be affected by a mistake. Thus, a contract may be avoided on the ground of mutual mistake of fact *where the mistake is common to both parties* and by reason of it each has done what neither intended. Furthermore, a defense may be asserted where there is a mutual mistake of the parties as to the subject matter, the price, or the terms, going to show the want of a consensus ad idem. Generally speaking, however, in order to affect the binding force of a contract, the mistake must be of an existing or past fact which is material; it must be as to a fact which enters into and forms the basis of the contract, or in other words *it must be the essence of the agreement*, the sine qua non, or, as is sometimes said, *the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties*." (Emphasis supplied).

The foregoing statements of principle find support in Betz v. Swanson, 200 Iowa 824, 826, 205 N.W. 507, 509 and Akkerman v. Gersema, 260 Iowa at 438, 149 N.W.2d at 859–860.

■ The burden therefore was on plaintiff, if a reformation was desired, to show a mutual mistake. In other words, both defendant City and plaintiff must have been working under the false impression the consent of the River Hills developers for additional land uses permitting transient housing sites (hotel-motel) and service station sites had been given and consequently Hyatt and Sinclair were going to bid.

Plaintiff's evidence failed to show the City was of the mistaken belief consent had been acquired.

From our de novo review we agree with the trial court's findings the Urban Renewal Board exercised the urban renewal powers of the municipality. The Urban Renewal Board and its employees at all times knew the status of tract C–Z; they knew of the appraisal and its terms; they knew that consents for transient housing and service stations could not be obtained at the time of the acceptance of plaintiff's offer by the defendant city council. The knowledge of the municipality's instrumentalities and agents was the knowledge of the municipality and its council.

Plaintiff failed to sustain its burden of proving the mistake as to Hyatt and Sinclair being competitive bidders was in fact mutual by clear, satisfactory and convincing proof.

As the trial court so aptly observed, "there may have been a mistake as to a material fact on the part of plaintiff. There was none on the part of defendant. The mistake was not mutual."

II. Plaintiff contends the failure of the Urban Renewal Department to inform plaintiff the consents were not obtained and thus of the elimination of competition constituted a fraudulent misrepresentation or concealment of a material fact. The trial court held there was no "active misrepresentation" on defendant's part and that since this was an arms-length transaction, mere silence on the part of defendant did not constitute actionable fraud.

Section 403.8(2), The Code, provides in part:

"A municipality may dispose of real property in an urban renewal area to private persons only under such reasonable competitive bidding procedures as it shall prescribe, or as hereinafter provided in this subsection. A municipality * * * may invite proposals from and make available all pertinent information to any persons interested in undertaking to redevelop or rehabilitate an urban renewal area, or any part thereof. * * *."

The above section is relied upon by plaintiff to show a duty on the part of the City to disclose relevant information. It contends a failure to disclose this material information presumably worked a fraud upon plaintiff which is deserving of compensation.

■ As a general rule, " * * * a municipality must 'prescribe a common standard on all matters that are material to the proposals, to the end that interested persons may bid intelligently and will be induced to bid by the promise of impartiality which only specifications of that quality can give.' * * * [citing authorities]." Skakel v. North Bergen, 37 N.J. 369, 181 A.2d 473, 478.

This principle of equality of treatment finds support in Inn Operations, Inc. v. River Hills, Etc. Co., 261 Iowa 72, 86–88, 152 N.W.2d 808, 817–818 where this court held interested parties must have an equal opportunity to bid and struck down a sale to a seller in which building restrictions were modified *after* the contract was entered into. The court stated the "failure to notify plaintiff and other qualified developers the restrictions were not to be enforced denied plaintiff and such others who might have been interested an equal opportunity to compete in acquiring the parcel by participating in the sale." Thus, there was an apparent affirmative duty on the city's part to so notify these other bidders in order that the sale be fair.

We adhere to the principle of equality recognized in *Inn Operations, Inc.,* but in our opinion that does not help plaintiff her since Wilden was never denied equal opportunity to acquire the property by bidding.

Before defendant city council set the official price of the parcel involved at $1.55 per square foot by resolution passed March 14, 1966, the official price of parcel C–Z had been $2.00 per square foot. As stated, Wilden's June and July 1965 bids of $.50 per square foot and $1.00 per square foot had been rejected by defendant. Potts' appraisal was filed August 4, 1965. There is evidence in the record McLaughlin was advised on August 11, 1965, by Mr. Krumrey, director of the Urban Renewal Board, that it was Krumrey's understanding the existing figure for sale of the property was in the neighborhood of $1.80 per foot but if Wilden would make an offer of $1.55 Krumrey would "go to bat" for Wilden. Wilden had been furnished a copy of the Potts appraisal which contained the conclusion it would not be prudent for the City to agree to sell the property to Wilden for $1.00 per square foot and the suggestion the larger portion of the land in C–Z be offered to Wilden for $1.55 per square foot.

The opportunity for information bearing on the failure to obtain consent of·other landowners in the area to construction of a transient housing facility and a service station site was equally open to both Wilden and defendant.

As we understand Wilden's argument it is based primarily on the fact when the city council set the official price of $1.55 per square foot for the sale of land in C–Z it did not know consent to use land in C–Z for a hotel-motel facility or a service station site had not been obtained; hence, the official price was erroneously determined.

From this plaintiff argues failure of the Urban Renewal Department and Board to advise Wilden of the elimination of other developers and by allowing Wilden to believe it was competing against a transient housing facility at the time Wilden submitted its bid constituted a fraudulent misrepresentation or concealment of a material fact in the bidding procedure.

"The elements of a cause of action for fraud * * * are: (1) representation, (2) falsity, (3) materiality, (4) *scienter,* (5) intent to deceive, (6) reliance, (7) resulting injury and damage." (Emphasis in original). Reinertson v. Consolidated Chem. Prod. Co., 205 Iowa 417, 420, 216 N.W. 68, 69; Wyckoff v. A & J Home Benevolent Assn., 254 Iowa 653, 658, 119 N.W.2d 126, 129; Ford v. Barcus, 261 Iowa 616, 622, 155 N.W.2d 507, 511; First National Bank in Lenox v. Brown, 181 N.W.2d 178, 181 (Iowa 1970).

"Fraud cannot be presumed but must be affirmatively proved by the one who relies on it either for the purpose of defense or attack. It must be established by a preponderance of the evidence by proof that is clear, satisfactory and convincing—such as to overcome the presumption in favor of fair dealing." *Wyckoff,* 254 Iowa at 657, 119 N.W.2d at 128–129; Ford v. Barcus, 261 Iowa at 622, 155 N.W.2d at 511; Scheer v. Swanson, 209 N.W.2d 53, 58 (Iowa 1973); In Re Estate of Lorimor, 216 N.W.2d 349, 353 (Iowa 1974).

Where fraud is alleged in cases of equity, however, the rules are not so strict. "Fraud may there be constructed from circumstances, whereas the law must find it as a fact. Furthermore, equity may grant relief absent a showing of scienter or pecuniary damage." Lenox, 181 N.W.2d at 181. See also Lorenzen v. Langman, 204 Iowa 1096, 1098, 216 N.W. 768, 769; Detrick v. Aetna Casualty and Surety Co., 261 Iowa 1246, 1255–1257, 158 N.W.2d 99, 106; and In Re Estate of Lorimor, 216 N.W.2d at 353.

"Fraud may arise from facts and circumstances, and an *intent* to defraud may properly be inferred from circumstances, words, and actions shown in evidence. * * * [citing authority]." State v. Johnson, 196 N.W.2d 563, 567 (Iowa 1972). (Emphasis supplied).

▮ To this extent, then, circumstantial evidence may be utilized to prove (1) a representation, (2) falsity, (3) materiality, (4) intent to deceive, (5) reliance.

▮ In order to obtain relief under the theory pled in division 2 of its petition plaintiff had the burden to establish each and every one of the foregoing elements by a preponderance of the evidence that was clear, satisfactory and convincing, whether such proof be by direct or circumstantial evidence. Thus, it was plaintiff's burden to establish materiality of the alleged misrepresentation to the extent just stated.

Rosenberg v. Mississippi Valley Constr. Co., 252 Iowa 483, 486, 106 N.W.2d 78, 80, a case involving rescission of a contract for fraud rather than reformation, as here, has this statement:

"To recover in an equity action on grounds of fraud one fundamental rule is that the alleged fraud must be material. 'One of the fundamental principles which pervades jurisprudence involving fraud and the maintenance of actions or defenses based thereon is that to constitute fraud in any case the facts misrepresented or concealed must have been material facts which substantially affect the interests of the person alleged to have been defrauded. According to the majority of courts which have attempted to lay down criteria of materiality, a fact is material when it influences a person to enter into a contract, when it deceives him and induces him to act, or when without it the transaction would not have occurred.' * * * [citing authorities]."

McLaughlin testified Wilden would not have increased its offer to $1.55 per square foot had it known that it was not competing against other redevelopers.

The following statement from 37 Am. Jur.2d, Fraud and Deceit, section 145, bears on plaintiff's alternative contention defendant fraudulently concealed the fact C–Z could not be used for a transient housing facility or a service station site:

"The law distinguishes between passive concealment and active concealment, or in other words, between mere silence and the suppression or concealment of a fact, the

difference consisting in the fact that concealment implies a purpose or design, while the simple failure to disclose a fact does not. Mere silence is not representation, and a mere failure to volunteer information does not constitute fraud. Thus, as a general rule, to constitute fraud by concealment or suppression of the truth there must be something more than mere silence or a mere failure to disclose known facts. Where there is no obligation to speak, silence cannot be termed 'suppression,' and therefore is not a fraud. Either party may, therefore, be innocently silent as to matters upon which each may openly exercise his judgment.

"Silence, in order to be an actionable fraud, must relate to a material matter known to the party and which it is his legal duty to communicate to the other contracting party, whether the duty arises from a relation of trust, from confidence, from inequality of condition and knowledge, or other attendant circumstances. In other words, there must be a concealment—that is, the party sought to be charged must have had knowledge of the facts which, it is asserted, he allowed to remain undisclosed—and the silence must, under the conditions existing, amount to fraud, because it is an affirmation that a state of things exists which does not, and because the uninformed party is deprived to the same extent that he would have been by positive assertion. Concealment or nondisclosure becomes fraudulent only when there is an existing fact or condition, as distinguished from mere opinion, which the party charged is under a duty to disclose.

"Concealment in the sense opposed to mere nonactionable. silence may consist of withholding information asked for, or of making use of some device to mislead, thus involving act and intention, or of concealing special knowledge where there is a duty to speak. The term generally implies that the person is in some way called upon to make a disclosure. It may be said, therefore, that in addition to a failure to disclose known facts, there must be some trick or contri-

vance intended to exclude suspicion and prevent inquiry, or else that there must be a legal or equitable duty resting on the party knowing such facts to disclose them."

It is to be noted Wilden's bid which was accepted by defendant was for only the east one half of tract C–Z containing 107,011 square feet whereas its rejected bids had been for the entire parcel of 214,022 square feet.

Wilden made this bid with actual knowledge Potts in his appraisal of C–Z had expressed the view the highest and best immediate use was for a motel and restaurant combination on about 75,000 square feet of the site and Wilden Hospital on the other 139,022 square feet. In this report of appraisal Potts had suggested the larger portion be offered to Wilden for $1.55 per square foot and the remainder of 75,000 square feet, or whatever was satisfactory with both parties, be made available to a transient housing developer for the same price of $1.55 per square foot as it was his opinion it would not be prudent for the City to dispose of parcel C–Z for $1.00 per square foot to Wilden Hospital. There is also the fact that one week after this report was filed the director of the Urban Renewal Board advised plaintiff if Wilden would offer $1.55 per square foot the director would "go to bat" for the Hospital.

Plaintiff does not question the right of the City to fix the official price on the entire tract at $1.55 per square foot regardless of Potts' appraisal. Nevertheless, plaintiff insists the council's use of an appraisal considering nonexistent uses of the land as a guide in fixing the official price for the tract constituted a fraudulent misrepresentation by the Urban Renewal Board or in the alternative a fraudulent concealment by that Board which entitled plaintiff to relief. We do not agree.

We return to Wilden's contention it would not have increased its offer to $1.55 per square foot had it known it was not competing against other developers. This court concludes from a de novo review

plaintiff failed to sustain its burden of establishing by clear, satisfactory and convincing evidence that the alleged belief claimed to have been entertained by the administrators of the hospital that it was competing with other land developers was a material fact which influenced the clinic to bid $1.55 per square foot.

The court reaches the same conclusion in regard to plaintiff's alternative theory that there was concealment of a material fact by defendant or its Urban Renewal Board which entitles plaintiff to relief.

The case is therefore

Affirmed.