Bernard NIE, Plaintiff-Appellant,

v.

GALENA STATE BANK & TRUST CO., An Illinois Corporation, Defendant-Appellee.

No. 85–675.

Court of Appeals of Iowa.

March 31, 1986.

Michael A. Stapleton, Dubuque, for plaintiff-appellant.

Robert R. Roth of Vincent, Roth & Elliott, P.C., Galena, Ill., for defendant-appellee.

Considered by DONIELSON, P.J., and SNELL and SCHLEGEL, JJ.

DONIELSON, Presiding Judge.

Plaintiff appeals from judgment for defendant in an action for fraud, asserting that the evidence was sufficient to support submitting the case to the jury.

Plaintiff, Bernard Nie, was employed by Donald Dunnegan, who operated Dubuque Feeder Pig Company, Inc., and Dunnegan Enterprises, Inc. Subsequently, Dunnegan became aware that Nie had received a sizeable inheritance from his father's estate and suggested Nie invest $50,000 into Dunnegan's two businesses in exchange for a one-half interest.

Dunnegan presented Nie with financial reports of the two businesses. The reports were prepared by John Law & Company. Being unfamiliar with investment and such financial matters, Nie was reluctant to invest.

At Dunnegan's behest, Nie met with representatives of the defendant, Galena State Bank & Trust Company, in regard to the financial status of the two businesses. Nie, his wife, and Dunnegan went to Galena, Illinois and met with Michael Bowling, a loan officer at the bank who was the person handling the Dubuque Feeder Pig account, to determine the financial condition of the business. Bowling represented that the company was a good business with which he was personally familiar and that certain financial statements, including a statement of inventory, accurately reflected the condition of the business. It was not disclosed that Bowling and Jerry Murdock, who was the vice-president of the bank, were doing hog business with the corporation and that some of the hogs on the business premises were theirs. No mention was made of overdrafts that had occurred and it was represented that the corporation's bank loans were current.

The bank extended loans to the corporation both before and after the meeting.

After this meeting in June of 1977, Nie decided to invest and used $35,000 of his inheritance and borrowed $5,000 to pay Dunnegan. In September 1977, Dunnegan advised Nie the bank was putting pressure on him to cover the over-drafts that were occurring, which necessitated a contribution of $20,000 from each of them, and in November 1977, he obtained a loan from his brother and Dunnegan obtained a loan through his father.

In September of 1977, Dunnegan was confronted by the bank on the overdraft problem. Nie suggested to Dunnegan that liquidation of the inventory of sows and gilts would help the overdraft problem, but was told that such would not help at all because the sows and gilts that would be sold were owned by Murdock and Bowling. This was Nie's first knowledge of the fact. Of the 200 sows and gilts, 100 were owned by Murdock and Bowling.

The situation deteriorated between Nie and Dunnegan and, in June of 1978, they agreed to have Nie take Dubuque Feeder Pig and Dunnegan take Dunnegan Enterprises. Nie continued to operate the business, but learned that there were substantial additional outstanding debts owed by Dubuque Feeder Pig. He was required to pay such debts which were paid out of the income of the business. This caused overdrafts, and necessitated procuring additional loans for the troubled business.

Nie filed a petition on June 28, 1982, against Dunnegan and the bank based on a fraud theory. Dunnegan was dismissed from the case when trial commenced. At trial, Nie presented expert testimony casting doubt on the accuracy of the financial statements done by John Law & Company and the solvency of the corporation at the time the investment decision was made. The court directed a verdict for the bank on the ground that there was no evidence that representations which were made to plaintiff were, at that time, false or known to be untrue.

In considering the propriety of a motion for a directed verdict, the court views the evidence in the light most favorable to the party against whom the motion was made. Iowa R.App.P. 14(f)(2). After reviewing the briefs and record, we find two issues must be addressed.

First, was the trial court correct in directing a verdict for the bank on a misrepresentation theory. We conclude the trial court's decision was correct.

The relevant portions of Nie's petition alleged: The representations made regarding the company's financial status by the bank, were false and made with the intent to mislead Nie by inducing him to purchase stock in the corporations.

The trial court found no fraud occurred because the loans made by the bank to the businesses were current and not in default; that the bank's agents had inspected the facilities of the business; that the loans were made by the bank after thorough investigation of the debt structure and financial condition of each corporation and with the full knowledge of their business operations, the extent of their assets and liabilities, and their general financial condition; that the officers were familiar with the financial statement of the corporation and stated the information contained thereon was true and correct; that the companies were making a lot of money and that it was a good investment for Nie; and that subsequent to the representations complained of, the bank loaned substantial amounts of money to the businesses which, according to the bank, establishes that any such representations, if incorrect at the time they were made, were not known to be false nor was any such representation, if untrue, made as a result of a culpable negligence.

To establish misrepresentation, Nie had to show (1) a material misrepresentation, (2) made knowingly (scienter) (3) with intent to induce plaintiff to act or refrain from acting (4) upon which plaintiff justifiably relies (5) with damages. *Beeck v. Kapalis*, 302 N.W.2d 90, 94 (Iowa 1981) (citing *Hall v. Wright*, 261 Iowa 758, 766,

156 N.W.2d 661, 666 (1968); Restatement (Second) of Torts § 525 (1977); W. Prosser, *Handbook of the Law of Torts*, § 105 (4th ed. 1971)). Nie must also prove such elements by a clear and convincing preponderance of the evidence. *Wilden Clinic, Inc. v. City of Des Moines*, 229 N.W.2d 286, 292 (Iowa 1975).

■ Despite Nie's expert's testimony regarding the financial statements, we agree with the trial court that the representations made by Bowling to Nie did not rise to the level of fraud. We cannot find that any of the financial information given by the bank, even though discrepancies may have existed, amounted to a knowing misrepresentation.

The second and more problematic theory which was raised in Nie's petition alleged that the bank officers knowingly and intentionally failed and omitted to inform Nie of the actual extent of the assets owned by them along with the liabilities of the corporations, and by said misrepresentations and concealments led Nie to believe that the accounts of the corporations were current, that the obligations were being met, and they were not in default on loans.

Even though *First National Bank in Lenox v. Brown*, 181 N.W.2d 178, 182 (Iowa 1970), indicates that silence, by a bank's officer who failed to disclose knowledge adverse to the customer's interest, (i.e., existing bank liens on the purchased business) qualifies as misrepresentation, we find that this is better characterized as a nondisclosure. *See Wilden Clinic*, 229 N.W.2d at 293 ("Mere silence is not representation, and a mere failure to volunteer information does not constitute fraud." In a relationship of trust or confidence, the superior party has a duty to disclose all material facts of which he is aware, or at least those favorable to his own position and adverse to the other.)

Nondisclosure is defined as:

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the

same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

\* \* \* \* \* \*

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551 (1977). *See also Wilden Clinic*, 229 N.W.2d at 293 (citing 37 Am.Jur.2d *Fraud and Deceit*, § 145 (1968) ("Silence, in order to be an actionable fraud, must relate to a material matter known to the party and which it is his legal duty to communicate to the other contracting party, whether the duty arises from a relation of trust, from confidence, from inequality of condition and knowledge, or other attendant circumstances. In other words, there must be a concealment—that is, the party sought to be charged must have had knowledge of the facts which, it is asserted, he allowed to remain undisclosed—and the silence must, under the conditions existing, amount to fraud, because it is an affirmation that a state of things exists which does not, and because the uninformed party is deprived to the same extent that he would have been by positive assertion. Concealment or nondisclosure becomes fraudulent only when there is an existing fact or condition, as distinguished from mere opinion, which the party charged is under a duty to disclose.

Concealment in the sense opposed to mere nonactionable silence may consist of withholding information asked for, or of making use of some device to mislead, thus involving act and intention, or of concealing special knowledge where there is a duty to speak. The term generally implies that the person is in some way called upon to make a disclosure. It may be said, therefore, that in addition to a failure to disclose known facts, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry, or else that there must be a legal or equitable duty resting on the party knowing such facts to disclose them.")).

In viewing the evidence in the light most favorable to Nie, we find that the bank had an interest in seeing new capital infused into the operation it had already invested in, and future loans may have been made to protect existing loans to keep the business a going concern, and Bowling and Murdock's failure to disclose they owned hogs which were part of the business could constitute actionable nondisclosure.

■ A customer who seeks impartial investment advice from a bank officer justifiably expects to speak to a disinterested party and would have no reason to think the officer to whom he is speaking would have personal investments in the business the customer's inquiries are directed to. We think a bank officer should disclose personal investments in a business which happens to be the same business a customer seeks investment advice about. Bowling and Murdock were not disinterested parties and this should have been disclosed. *But See Wilden Clinic*, 229 N.W.2d at 293 ("Thus, as a general rule, to constitute fraud by concealment or suppression of the truth there must be something more than mere silence or a mere failure to disclose known facts. Where there is no obligation to speak, silence cannot be termed 'suppression,' and therefore is not a fraud. Either party may, therefore, be innocently silent as to matters upon which each may openly exercise his judgment.").

The bank seeks to mitigate the impact of the nondisclosures by maintaining the self-dealing of Murdock and Bowling were dis-

closed to and approved by the bank's board of directors. This, according to the bank, evidences that neither of the nondisclosures were material to the business' financial condition. The bank claims that nondisclosure of self-dealing was not material to Nie's investment decision. We disagree.

Regardless of whether Murdock and Bowling accurately represented inventory figures, we find that failure to disclose two bank officers personally owned a substantial portion of the inventory of one of the inquired-about businesses was sufficient to overcome a directed verdict, especially when Nie did not become aware of this situation until much later. Even the bank concedes Nie was a hesitant investor and relied heavily upon such advice.

■ While we express no opinion as to whether Nie can support his claim by clear and convincing evidence, we do find that for purposes of a directed verdict, which means we view the evidence in the light most favorable to the nonmoving party, the trial court's ruling as to nondisclosure is reversed and remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.