Warren M. GENTILE, Plaintiff–Appellee,

v.

ALLIED ENERGY PRODUCTS, INC., Phil Pagano and Frank Pagano, Defendants/Counterclaim and Cross–Claim Plaintiffs/Appellants,

v.

Warren M. GENTILE, Thomas F. Gentile, and Warren M. Gentile d/b/a National Siding Co., a/k/a National Energy f/k/a Allied Siding, Counterclaim and Cross–Claim Defendants/Appellees.

No. 90–1155.

Court of Appeals of Iowa.

Nov. 26, 1991.

Robert B. Garver, Des Moines, for appellants.

John P. Dollar, Des Moines, for appellees.

Considered by SCHLEGEL, P.J., and HAYDEN and HABHAB, JJ.

SCHLEGEL, Presiding Judge.

On October 2, 1986, the parties entered into a written "recourse agreement" under which Warren Gentile and his son, Tom, purchased twelve retail installment accounts from Allied Energy Products. The Gentiles paid seventy-five percent of the then face value of the accounts. These accounts were debts owed to Allied Energy as a result of siding done on the debtors' homes. Phil and Frank Pagano, the owners of Allied Energy, personally guaranteed the performance of the agreement. Checks would be sent by the debtors to Allied, which would then remit the money to the Gentiles.

Under the recourse agreement, if any of the accounts went into default, the Paganos would pay off the balance of the account to the Gentiles. The original agreement had a time limit set at eighteen months, and this was later extended on November 9, 1987, to thirty-six months.

At the time of the original purchase, the accounts receivable had a face value of $64,706.23. The Gentiles purchased these accounts for an investment of $48,529.68. Warren and Tom each paid half of the purchase price. On November 10, 1987, Tom Gentile assigned his interest in the October 2, 1986, agreement to his father, Warren.

Problems arose when several of the accounts became delinquent, and others were paid off early by the account debtors. These accounts had differing interest rates, and the total payoff time varied between five and ten years. The values of each account also varied. In the case of the accounts which paid off early, the Paganos failed to pass the early payoff to the Gentiles. In the case of accounts that defaulted, the Paganos refused to pay off the defaulted accounts. Instead, the Paganos merely kept making the monthly installment payments for each debtor until the thirty-six months of the recourse period had expired. The net result was that Warren Gentile received less than the entire debtor account balance owed.

Warren Gentile thus instituted these proceedings asking for specific performance of the contract, the appointment of a receiver and accounting, attorney fees, receivership fees, and punitive damages. The Paganos counterclaimed against the Gentiles based on a debt that Thomas Gentile had incurred through his siding company which purchased supplies from Allied.

Following a bench trial, the district court concluded Warren Gentile carried his burden of proof that the defendants owed an additional $25,507.48 on the recourse agreement. The court specifically found no merit in the allegations of defendants' counterclaims. Additionally, the court awarded attorney fees and costs to Warren Gentile. Defendants Frank and Phil Pagano appeal.

Our review is de novo. Iowa R.App.P. 4. We have a duty to examine the whole record and adjudicate anew properly presented issues. *Kufer v. Carson*, 230 N.W.2d 500, 503 (Iowa 1975). Weight is given to the findings of the trial court, but they are not binding. *Wilden Clinic, Inc. v. City of Des Moines*, 229 N.W.2d 286, 289 (Iowa 1975).

I.

The Paganos first argue a mutual mistake of material fact exists concerning paragraph six of the recourse agreement. Paragraph six states in full:

6. Allied represents and warrants that each purchased Account and any evidence of debt received thereon, will be paid in full, including each and every monthly installment due on said account. *If any Account or payment thereon should not be so paid in whole or in part, Allied, will upon demand, pay Gentile the full amount remaining unpaid thereon.* Allied shall pay said amount to Gentile within five (5) days of written demand therefor, at which time Gentile shall deliver to Allied all documents associated with such defaulted Account, and Gentile shall further exe-

cute whatever documents are necessary to transfer ownership of said Account to Allied.

(Emphasis added.) Warren Gentile contends reformation is neither an available nor an appropriate remedy in this case.

■ The trial court found "there is no ambiguity in the recourse agreement and that if a debtor is in default according to its contract Gentile has full recourse against Allied for 100% of the contract value." We agree. The proper relief for a mutual mistake of a material fact in a written instrument is reformation of the instrument to reflect the true intent of the contracting parties. *Wilden Clinic,* 229 N.W.2d at 289. However, the party seeking reformation has the burden of establishing by clear, satisfactory, and convincing proof that the writing does not express the real agreement between the parties. *Id.* (citing *Akkerman v. Gersema,* 260 Iowa 432, 438–39, 149 N.W.2d 856, 859–60 (1967)).

■ The burden is on the Paganos, if a reformation is desired, to show a mutual mistake. The Paganos have not met this burden. We cannot find that both the Gentiles and the Paganos were working under the false impression that the Gentiles had recourse for only seventy-five percent of the unpaid account. Under the doctrine of mutual mistake, the mistake must be both mutual and material. *Wilden Clinic,* 229 N.W.2d at 290. The mistake here was not common to both parties. The language of paragraph six states "the full amount remaining unpaid thereon;" it is not reasonable to interpret the words "full amount" to mean seventy-five percent. The Paganos do argue that they "apparently understood the work [sic] 'account' contained in paragraph six to refer to the individual accounts set up for the Gentiles which computed their initial investment on each installment contract less than the principle deduction from monthly payments made."

On our de novo review, we agree with the trial court's finding that there is no ambiguity in the agreement. *See Maisel v. Gelhaus,* 416 N.W.2d 81, 86 (Iowa App. 1987) (factual disputes which depend heavily on the credibility of witnesses are best resolved by the trial court).

## II.

■ The Paganos next argue the recourse agreement and its extension are unconscionable. They state: "The application of the extension agreement as requested by the Gentiles results in a finance [sic] windfall for the Gentiles which was not contemplated by the Paganos at the time of the agreement. The result is unconscionable."

■ In considering a claim of unconscionability the court should examine the factors of assent, unfair surprise, notice, disparity of bargaining power, and substantive unfairness. *C & J Fertilizer v. Allied Mut. Ins. Co.,* 227 N.W.2d 169, 181 (Iowa 1975). The record in this case reflects that the parties were of equal bargaining power. Frank Pagano testified that he was not under any financial pressure and that he had "sold" accounts before. The language of the agreement was clear and easily read. *See id.* at 179 (offending language in small print and not where normally expected; contract held unconscionable).

The agreement was prepared by Gentile's attorney. He followed a recourse agreement that the Paganos had previously used, and he told the Paganos to have an attorney examine the document. We determine there was no unconscionability in the agreement nor the extension.

## III.

The Paganos state their counterclaim against Warren and the cross-claim against Tom were improperly dismissed. They note that Tom admitted he is personally liable to Frank Pagano on the counterclaim. In their counterclaim, the Paganos state that National Siding Company is an Iowa corporation and that Warren and Tom Gentile are officers of that corporation. They allege there has been a breach of the recourse agreement and fraud in the inducement. They ask for recision of the contract, reformation of the contract, and money damages for siding material pur-

chased from them by the Gentiles as officers of National Siding Company.

The trial court ruled there is no merit in the allegations of the counterclaim. We also agree. We addressed above some of our reasons; we now confront the money damages issue. All purchases made from Allied Energy Products were made in the name of the corporation, National Siding Company. The Paganos cannot pierce the corporate veil as to Tom Gentile. In addition, Warren Gentile was not part of that corporation. We believe the November 10, 1987, assignment of rights from Tom to Warren is valid. We determine the Gentiles are not personally liable for materials and, as such, this issue is not relevant to the present action.

### IV.

Finally, the Paganos argue the award of attorney fees and costs should be reversed. Trial courts have considerable discretion in awarding attorney fees. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa App.1983). We conclude the court did not abuse its discretion. We affirm the award to Warren Gentile of attorney fees and costs.

### V.

For the reasons above, we affirm the trial court on all issues. The Paganos owe Warren Gentile $25,507.48 on the recourse agreement. The costs of this appeal are taxed to Allied Energy Products, Phil Pagano, and Frank Pagano.

AFFIRMED.