**John MORTON and Jessie Morton, Appellants,**

v.

**UNDERWRITERS ADJUSTING COMPANY, a Corporation; Continental Insurance Company, a Corporation; and the Fidelity and Casualty Company of New York, a Corporation, Appellees.**

No. 92–642.

Court of Appeals of Iowa.

March 30, 1993.

Marc A. Humphrey and Kathleen J. Beebout of Humphrey & Haas, P.C., and Richard A. Bartolomei of Bartolomei and Lange, Des Moines, for appellant.

Roland D. Peddicord and Joseph M. Barron of Peddicord, Wharton, Thune & Spencer, P.C., Des Moines, for appellee.

Heard by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

The plaintiffs John and Jessie Morton (hereinafter "Morton") appeal a district court's ruling denying their petition to set aside a workers' compensation settlement on the basis of fraud. Morton contends the district court erred in: (1) failing to address the issue of the duty of full disclosure by the agent of an insurance company; (2) its application of the elements of equitable fraud; and (3) failing to apply the prevailing workers' compensation law pertaining to shoulder and rotator cuff injuries.

In 1987, John Morton sustained an injury while operating a tractor-trailer for Smithway Motor Express. Morton was initially diagnosed with injuries to his heel, knee, ribs, a finger, and his left shoulder. The shoulder injury was the most serious and Morton was referred to an orthopedic surgeon. Dr. Grant confirmed that Morton sustained a tear to the rotator cuff of the left shoulder. Dr. Grant performed a surgical repair of Morton's rotator cuff.

Renee Kidman, a claims examiner for the employer's insurance company, was in charge of investigating, adjusting the claim, and communicating with Morton. Kidman contacted Dr. Grant to determine when Morton had reached a point of maximum medical improvement and to determine the extent of Morton's permanent impairment. In a letter dated August 11, 1988, Dr. Grant opined that Morton had a thirty-two percent permanent partial impairment of his left upper extremity as a result of his rotator cuff tear. Upon receipt of the rating, Kidman wrote Morton informing him of the rating and informing him that he was entitled to eighty weeks of permanent partial disability benefits. *See* Iowa Code § 85.34(2)(m). Morton had already been paid six weeks of permanent partial disability benefits and he indicated to Kidman that he wished to enter into a settlement for the remaining benefits. Morton and Kidman reached an agreement whereby Morton would receive $21,300 for his permanent impairment to his shoulder and for future medical benefits. Morton reviewed the commutation documents and signed them. The commutation was approved by the industrial commissioner.

Morton filed a petition at law alleging, among other things, equitable fraud and seeking to have the commutation set aside. Morton argued that the defendants failed to disclose to Morton that he may be entitled to industrial disability benefits rather than schedule member benefits if he could prove that his shoulder injury extended to the body as a whole. Following a hearing, the district court found that Morton had failed to meet his burden of proving fraud. The district court entered judgment in favor of the defendants.

Morton appeals. We affirm.

■ This portion of the case was tried in equity. As tried, it is considered on appeal. *First National Bank in Lenox v. Brown*, 181 N.W.2d 178, 181 (Iowa 1970). Thus our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *Schildberg v. Schildberg*, 461 N.W.2d 186, 190 (Iowa 1990). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ The sole issue before us on appeal is whether the defendants committed equitable fraud. The elements of fraud are: (1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent to deceive; (6) reliance; and (7) resulting injury and damage. *Wilden Clinic v. City of Des Moines*, 229 N.W.2d 286, 292 (Iowa 1975).

Fraud must be established by a preponderance of the evidence by proof that is clear, satisfactory and convincing—such as to overcome the presumption in favor of fair dealing. *Id.* Where fraud is alleged in cases of equity, however, the rules are not so strict. *Id.* Equity may grant relief absent a showing of scienter or pecuniary damage. *Id.* In equitable fraud the elements of scienter and intent to deceive are closely related and are shown not only when the speaker has actual knowledge of the falsity of her representations but also when she speaks in reckless disregard of whether her representations are true or false. *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 155 (Iowa 1984).

Morton argues the defendants committed fraud because they had a duty to inform him about the difference between scheduled and non-scheduled injuries. Under *Harrison v. Keller*, 254 Iowa 267, 271, 117 N.W.2d 477, 480 (1962), once the workers' compensation carrier, through its claims adjuster, has assumed the position of advisor to the plaintiff, that adjuster is duty bound to make a full disclosure to him.

However, even if defendants should have explained more fully to Morton the difference between industrial disability and scheduled injury, we find that Morton has failed to prove by a preponderance of clear, satisfactory, and convincing evidence that defendant's agent, Renee Kidman, had any intent to deceive Morton or acted with reckless disregard by her silence.

Kidman asked Morton's physician, Dr. Grant, for a permanent partial disability rating based on the American Medical Association Guides to Permanent Physical Impairment ("AMA Guides"). Dr. Grant gave a rating of 32% partial permanent physical impairment of the left upper extremity as a result of Morton's rotator cuff tear. Kidman based her settlement offer on this impairment rating. Dr. Grant did not, nor has he ever, opined that Morton sustained any disability extending beyond the use of his upper extremity.

The commutation documents prepared by Kidman's attorney specifically mention industrial disability. A document entitled a Statement in Support of Commutation of All Remaining Benefits, paragraph 3 provided:

I understand my potential rights under the Iowa Workers' Compensation Laws including my potential rights regarding industrial disability as outlined in Exhibit A attached hereto and the terms of this Commutation and I am satisfied with the terms of this Commutation.

The trial court found Exhibit A, referred to in paragraph 3 above, was attached to the statement and was a listing of various considerations that would be taken into account in determining an entitlement under industrial disability benefits. Paragraph 4 of the statement provided:

I have been advised that before signing this document and the Original Notice and Petition for Commutation of *All Remaining Benefits* and Order for Lump Sum Payment, I have the *right* to 1) consult with an attorney of my choosing and 2) to call the office of the Iowa Industrial Commissioner at (515) 281–5934 for a full explanation of its terms and my rights under the Iowa Workers' Compensation Laws, and that I have either exercised said rights or do not wish to do so.

Morton knew he had a right to speak with an attorney. He also understood he could call the Iowa Industrial Commissioner for a full explanation of the terms of the full commutation settlement and his rights under the Iowa Workers' Compensation Laws. Morton testified he signed the documents because Kidman told him the agreed sum was all Iowa law allowed him. Kidman denied such a representation. The trial court found Kidman to be more credible in this regard. From our de novo review of the record we see nothing which would lead us to overrule the trial court on this point.

Although we find it unlikely that a rotator cuff injury should have been classified as a scheduled injury, we find Morton has failed to show Kidman, as an agent of the defendants, intended to deceive Morton or acted with reckless disregard when she relied on Dr. Grant's assessment that the

injury was only to the upper extremity. Morton argues that Kidman was reckless in relying solely on the impairment rating given by the physician, since under *Lauf-hoff Grain Co. v. McIntosh*, 395 N.W.2d 834, 839 (Iowa 1986), the AMA ratings are not binding on the industrial commissioner. We find no merit in this argument. Kidman is not an attorney. There is no evidence in the record as to her knowledge as to whether the AMA ratings are binding on the industrial commissioner. No other doctor gave a contrary impairment rating to Dr. Grant's. We also find no merit in Morton's assertion that Kidman deliberately deceived the Industrial Commissioner as to the nature of Morton's injury. The documents received by the Industrial Commissioner do characterize the injury as an arm injury, but they also describe the injury as a rotator cuff tear.

We affirm the trial court's finding that Morton failed to prove equitable fraud.

**AFFIRMED.**