ANNA HERR KLATT, Executrix, Appellant, v. FIRST STATE BANK OF CALMAR. et al., Appellees.

FIRST STATE BANK OF CALMAR, Appellee, v. ANNA HERR KLATT et al., Appellants.

JUNE 26, 1928.

*D. D. Murphy & Son* and *W. M. Allen*, for appellants.

*Goheen & Goheen* and *C. N. Houck*, for appellees.

ALBERT, J.—One Ernest Herr died testate at Calmar, Iowa, in July, 1913, leaving surviving him his spouse, Anna Herr, and three children. The surviving spouse was appointed executrix of the estate, which was worth approximately $35,000, consisting of a local meat market, certain real estate, shares of stock of Swift & Company, and other property. By the terms of the will, the spouse was given a life estate in the homestead and all other property, and to each of the three daughters was given a legacy of $3,000. This property belonging to the estate, except the homestead and the Swift stock, was converted into cash, between $21,000 and $22,000 being realized therefrom. The debts and expenses of the estate seem to have been paid. Aside from the remainder in the homestead and the three legacies of $3,000 each to the children, the surviving spouse, Anna Herr, was the sole beneficiary under the will.

In 1915, Anna Herr married one William Klatt. The aforesaid amount of about $22,000, realized from the proceeds of Ernest Herr's estate, was deposited by Anna Herr Klatt in the First State Bank of Calmar in an open account. Wishing to realize interest thereon, at the suggestion of one of the officers of the bank, she bought therefrom four mortgages and notes, paying for the same out of her open account. These mortgages and notes were kept in a safety deposit box in the bank, to which box both Mr. and Mrs. Klatt had a key. William Klatt attempted to draw checks against the open account of his wife in this bank, but was refused permission by the bank until his wife authorized the same, which she did in writing; and thereafter, checks drawn by either Klatt or Mrs. Klatt against this account were honored and paid by the bank.

This bank was duly organized under the laws of the state of Iowa as a state bank; and so far as the facts in this case are concerned, Ole P. Ode, an officer, and Louis A. Dessler, cashier,

seem to be the only officers of the bank that had anything to do with the transactions involved herein.

As to the Swift & Company stock, by reason of some financial changes, this stock was sent in by the executrix of the estate and exchanged for a like amount of other stock issued by Swift & Company, Libby, McNeill & Libby, and other stock, designated as "Swift's International." All of this new stock was issued in the name of Anna Herr (Klatt).

In April, 1919, two high-pressure salesmen by the names of Johnston and Harvey appeared in Calmar, selling stock in the North American Fire Insurance Company and the Great Republic Re-Insurance Company, both of which companies had their headquarters in Des Moines, and were in the process of organization at that time. They appeared at the Klatt residence and solicited them to buy stock in one or both of these companies, which the Klatts then refused to do. Later, Klatt called at the bank on business, and was again importuned, he claims by the agent and Ode, to buy stock. He bought 50 shares of stock in the North American Company, and turned in as part payment thereon a mortgage and note for $6,000 which were taken by him from the safety deposit box, and were a part of the securities purchased by his wife, as above specified. He also gave his own note for $4,000. This note was later bought by the State Bank of Calmar. Later, he purchased 50 more shares of stock, for which he gave the company two notes, one for $2,500, and the other for $7,500, both of which notes were purchased from the insurance company by the same bank. The certificates of stock thus purchased were attached to these notes as security therefor.

On September 17, 1919, Mrs. Klatt learned for the first time that her husband had purchased 100 shares of stock, although he had told her at one time that he had invested $2,000 in insurance stock. Thereupon, this stock was returned to the company, on the advice of Ode, and new stock was issued in the name of Mrs. Klatt, because her money was invested therein.

On September 18th, Klatt subscribed for 25 shares of what was called "reinsurance stock," and gave two notes, one for $1,250, and the other for $3,750. The bank purchased the $1,250 note the next day, and on January 29, 1920, purchased the $3,750 note. At this point, the bank held $19,000 of notes given by William Klatt. On February 24, 1920, Anna Herr Klatt was

called to the bank, and advised that the stock had been transferred to her name; and new notes were taken, signed by her, and so dated as to correspond with the dates of the original notes, and the old notes were turned over to her. She paid $2,500 on these notes. Later, the $4,000 note was changed to two notes of $2,000 each, and dated back. The $7,500 note was renewed on May 8, 1920. On May 7, 1921, the notes that became due on May 8th were renewed and extended by giving new notes. This transaction, however, occurred on May 14th, and the notes were dated back to May 7th, to cover the notes becoming due May 8th.

The above notes are the basis of the second suit herein, in which the bank seeks to recover from William Klatt and Anna Herr Klatt the amount due on certain notes, and the application of certain collateral security hereinafter referred to.

The Swift stock, above referred to, was appraised at about $9,000, as a part of the assets of the Herr estate, and Ole P. Ode was one of the appraisers. At the time of the renewal of the notes, in May, 1921, Mrs. Klatt was called to the bank, and advised that she must pay these notes or collateral them, as the bank could not give further time unless they had further security; whereupon new notes were issued, signed by Mrs. Klatt, and she turned over to the bank the Swift & Company stock, as collateral security therefor. The renewal notes bore due date of November 7, 1921, and it is to recover this Swift & Company stock, put up by Anna Herr Klatt as collateral, that the first case herein was instituted.

In the intermediate time, certain of the stock that Mrs. Klatt had was turned over by her to one of her daughters, to apply on her legacy. Through some adjustment or manipulation, the original insurance companies went into the hands of a trustee. A reorganization scheme of some kind was advised, and the original stock in the name of Mrs. Klatt was taken up, and new stock issued to her. Later, there was a liquidation, and certain dividends were paid to her thereon. Equally so, a dividend was paid to the daughter who had received part of the stock.

So far, there is no dispute as to the foregoing statement of facts; or if any of them are disputed, the great weight of testimony shows the above statement to be true.

In the action to set aside the transfer of the Swift & Company stock, the contention of Anna Herr Klatt is that said shares were in fact the property of the estate of Ernest Herr, and not her individual property, and that the defendants were charged with notice thereof. As to this contention, if it has any basis at all, it must rest wholly on the evidence that Ole P. Ode knew that the stock belonged to the Herr estate, because he was the appraiser of the assets of that estate; and second, that knowledge on his part was knowledge of the bank. In our opinion, this contention cannot be sustained. The Herr estate was open in 1913, and presumably, an inventory was filed shortly thereafter, and an appraisement made. Even though we concede that the bank would be bound by the knowledge of its president, we think the doctrine has no application to this case. The fact that in 1913 Ode knew that in the Herr estate, which he helped to appraise, there were certain shares of stock of Swift & Company as a part of the assets, is not knowledge of the fact that, many years later, stock presented to the bank as collateral, in the name of Anna Herr Klatt, was the stock that he helped to appraise in the Herr estate, which, at the time of the appraisement, was in the name of Ernest Herr. There is no showing that he knew anything about or had anything whatever to do with the Herr estate, except simply to act as appraiser of the assets thereof. There was nothing in the situation which would put him on his guard or inquiry as to where she got this Swift & Company stock. In other words, no one questions the legality of the stock, either as to form or character; and, as it was payable to her, in the absence of any other circumstances he would have a right to believe that she was the legal owner thereof, since it was in her possession. There is nothing at this point for Anna Herr Klatt on this contention.

It is next argued that the transfer of this stock to the bank as collateral was secured by fraud on the part of the bank and its managing officer, who stood in a confidential relationship to her. For a determination of this question, a careful review of all of the testimony in the case would be required, and it is impossible to set it all out within the proper length of an opinion. Suffice it to say, Ernest Herr was a butcher, engaged

during his lifetime in running a butcher shop. He transacted business with a bank with which O. P. Ode was connected, prior to the time he became president of the First State Bank of Calmar. After Ode became connected with the First State Bank of Calmar, Mrs. Anna Herr Klatt carried an open account there. Her claim is that she advised with Ode about her business transactions, and relied and acted on his advice. She says at other places in her testimony that, after she married Klatt, she relied on him to look after her business and to advise her as to her business transactions. She also says that she had some relatives on whom she depended for advice in the same way. It is true that, as to some certain specific transactions, she did advise with Ode; but we are satisfied from the record that the relationship between Mrs. Klatt and the bank or Ode was the ordinary relation between a bank and a depositor. It does not suffice as a basis of a claim of a confidential relation that the relation of banker and depositor exists. It is the usual custom with many depositors in business transactions to ask the banker for his opinion of the transaction; but to say that, under such circumstances, a confidential relation is created, would be going too far.

The evidence shows that Mrs. Klatt was seeking an investment for her $22,000, which was in an open account, without interest, and that Ode advised her to invest it in first mortgages, which she did. There was no question about this investment, and she lost no money thereby. True, she bought these mortgages from the bank, but a transaction of that kind comes far from creating a confidential relation. Ode called her, in proper season, and advised her that her husband was using these securities which she had bought, to purchase stock in insurance companies, and suggested that, so long as her money was going into the stock, she should have the stock in her name; and it was eventually transferred to her. There was nothing of a confidential nature about this. She says he told her, at the time, that the stock was worth what was paid for it, and that the companies were getting along well; and there is nothing to show but that Ode at the time believed the same to be true. He had become president of one of the insurance companies, and should have known "whereof he spoke," and there is nothing in the record to the contrary. Aside from this, this is not a transaction with which the bank had anything to do, or was in any way

interested; so there could be nothing therein that would be binding upon the bank. Later, when some of Klatt's notes became due,—the stock having passed into the hands of Mrs. Klatt,— the question of the renewal of the notes came up; and, so long as she was then the owner of the stock represented by the notes, she was requested to sign these notes with her husband, which she did. This, of course, was a transaction with the bank itself. Her action in so signing said notes seems to have been voluntary on her part, and no fraudulent representations seem to have been made to her, to induce her to sign the same. When the notes became due again, after she had paid a part of them, and the bank refused to extend the time unless it was given further security, she seems to have hesitated about giving such additional security; and one Goheen, who, as we understand the record, was attorney for the Herr estate, was called in, and seems to have suggested that it was for her to determine whether she would put this stock up as collateral, and said it was all right for her to do so; and she thereupon did pledge the stock with the bank as collateral for the extension of time to November 17th on the notes in question.

We cannot say from the record, which we have only partially set out, that any confidential relation existed between Mrs. Klatt and any officer of the bank such as will be available to her as a defense herein.

It is next insisted that the notes executed by Anna Herr Klatt were procured by fraud on the part of the bank and its officers. As we gather from the record, the notes sued on in the second case herein are the third series of notes signed by Anna Herr Klatt, two series being renewals, and the last series being the notes for which the Swift & Company stock was put up as collateral. We have scanned this record with care; and, under the well known rules in matters of this kind, we are unable to find sufficient evidence on which to base a finding that these notes were procured from Mrs. Klatt by fraud.

The next contention is that no consideration passed for the pledging of this Swift stock as collateral security. The argument at this point is a very narrow one. It is bottomed on the proposition that, on the 14th of May, when this stock was pledged, there were no notes due, and therefore there was no consideration for the pledging. The evidence, however, shows that

the transaction occurred on the 14th of May, and that the renewal notes then taken were dated back to May 7th, the day on which the old notes were due; and appellant argues that, because these notes bore date of May 7th, none of them were due at the time the collateral was put up. Under the explanation made in the record,—that the notes were dated back,—we are disposed to think that it was all one transaction, and that the extension of time procured by the issuance of the renewal notes was a sufficient consideration for the pledging of the collateral.

As heretofore suggested, we have not a copy of the will of Ernest Herr before us, and cannot therefore determine just what was the relation of Mrs. Klatt to this stock; but from what we gather from the record, she received this stock as a part of the estate given to her under the will. But if this be not so, when the stock was presented at the bank for collateral purposes, it was found to be in her name, and the bank was not bound, in the first instance, to make further inquiry as to her derivation of title. She alleges that she was not the owner thereof, and the burden would be upon her to so prove, if, in fact, such a matter would be a defense in a case of this kind, and in this respect she has failed. Mrs. Klatt spoke broken English, and it was apparently difficult for her to make herself understood; yet, when inquiry was made about some of the principal points in the case, she responded that she "did not know," or "did not remember;" and in some instances it was shown that she claimed that a transaction occurred with Ode when in fact it occurred with the cashier. This is more especially so with reference to the putting up of this stock. Taking it all in all, we are disposed to hold with the district court in the first case, that plaintiff did not establish her cause of action.

As to the second case, the suit by the bank to recover judgment on these promissory notes against Anna Herr Klatt and her husband, and to apply the pledged collateral thereon, the Klatts' defense was that the notes sued on were renewals of the notes originally given for insurance stock subscriptions, and that both subscriptions and notes were procured from them through fraud of the bank and its managing officer, Ole P. Ode, who was interested in the insurance company. The law governing such a proposition as a defense is well understood. The burden of such allegations

of fraud rests upon the party asserting it. The last expression of this court on this question is *Ellison v. Stockton,* 195 Iowa 615. It is also a well settled rule that such allegations must be established by a preponderance of the evidence. The last expression of this court on this proposition is *Richards & Comstock v. Fredrickson,* 171 Iowa 669.

The material matters in the record constituting the alleged fraud are matters which are in no way shown to be false and fraudulent at the time they were made, either directly or inferentially. While it is true that, in an equity case, it is not necessary that it be proven that the party making the assertions knew them to be false at the time he made them, even a want of knowledge on his part may not be available as a defense to him if the matters asserted were, in fact, false at the time he made them. But the weakness in this case lies in the fact that there is no showing that the alleged assertions made by Ode, which are the basis of the charge of fraud, were in fact false at the time they were made; and without such a showing, the defense of fraud must fail.

As to the defense made in the second case by Anna Herr Klatt, her claim is that the execution of the renewal notes was procured by fraud on the part of the plaintiff (bank) and its president and managing officer, Ole P. Ode, who stood in a confidential relation to her, and that the renewals were made without knowledge of the fraud. This matter has been quite fully covered in the former part of this opinion, and needs no further attention here.

As to the second part of her defense, with reference to the foreclosure against the Swift & Company shares of stock, held by the bank as collateral, she makes the identical contention made in the first case against the bank. This matter has also been quite fully covered in the first part of this opinion, and needs no further attention.

It therefore follows that the defendants failed to make good their defense in the suit by the bank to recover judgment on these notes and to foreclose against the collateral held.

Some other matters are discussed in the case, but we do not deem them of controlling importance.—*Affirmed as to both cases.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.