Jim D. KOLB, et al., Plaintiffs,

v.

Frank W. NAYLOR, Governor, Farm
Credit Administration, et al.,
Defendants.

No. C 85–4184.

United States District Court,
N.D. Iowa, W.D.

March 27, 1987.

Timothy Shuminsky, Sioux City, Iowa, Roger Elletson, Cheyenne, Wyo., for plaintiffs.

Sandra Schraibaum, Julianna D'Angelo, Dept. of Justice, Washington, D.C., James Fitzgerald, Omaha, Neb., William Edmonds, Sioux City, Iowa, Frank Hutfless, Omaha, Neb., Paul Lillios, Asst. U.S. Atty., Cedar Rapids, Iowa, for defendants.

**1.** The Court notes that as of the day of the hearing, no motion for class certification had been filed.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

This matter is before the Court on the federal and nonfederal defendants' motions to dismiss. A hearing was held on February 9, 1987. After careful consideration of the parties' briefs and arguments and plaintiffs' exhibits, the Court grants both motions.

## FACTS

Plaintiffs are five Iowa citizens who are attempting to bring a class action [1] against various defendants, including the Federal Reserve Board, certain agricultural lenders, and the Farm Credit Administration. Plaintiffs' farms have been foreclosed, and the substance of their complaint is that defendants have violated a wide variety of state or federal statutes and have implemented policies against the interests of American agriculture and the family farm.

The defendants fall into two categories. The federal defendants consist of Paul Volcker, chairman of the Federal Reserve Board; the Board of Governors of the Federal Reserve System; the Federal Reserve Bank of Chicago, including Silas Keehn, president; John W. Gabbert, Barry E. Sullivan and O.J. Thomson, Class "A" directors, Federal Reserve Bank of Chicago; and Frank W. Naylor,[2] chairman of the Farm Credit Administration Board.

The nonfederal defendants include the Federal Land Bank of Omaha, Federal Land Bank Association of Harlan, Federal Land Bank Association of Manchester, Federal Land Bank Association of Sioux City, Federal Land Bank Association of Storm Lake, Sheldon Production Credit Association, Federal Intermediate Credit Bank of Omaha, John Harling, the president of Farm Credit Banks of Omaha, and Loan Officers Ron Nagel, John Stoll, Charles R. Van Dyke, Michael Bergland, David Appleby, Melinda Megal, Richard Haack and Dan Dreesen. Before addressing the motions,

**2.** Frank Naylor has been substituted as a party pursuant to Fed.R.Civ.P. 25(d)(1) as Donald E. Wilkinson resigned as acting chairman on March 28, 1986.

the Court believes that a short explanation on the interrelation of the defendants is in order.

The Farm Credit Administration (FCA) is one of several agencies established under the banking provisions (Title 12) of the United States Code. The FCA's function is similar to that of the Comptroller of Currency's in that the FCA charters, supervises and regulates lending institutions. *See* 12 U.S.C. § 2252. The FCA's authority derives from the Farm Credit Act of 1971, as amended, 12 U.S.C. § 2001, *et seq.* As a result of the Farm Credit Amendments Act of 1985, Pub.L. No. 99–205 (Dec. 23, 1985), a three-member Farm Credit Administrative Board sets the agency's general policy. The Board's chairman serves as the FCA's chief executive officer. The FCA is solely a regulatory agency and has no statutory authority to lend funds. As the FCA is a federal agency, a suit against it is a suit against the United States.

The FCA oversees approximately 400 federally-chartered, privately-owned and capitalized agricultural lending institutions comprising the Farm Credit System. The System is divided into twelve Farm Credit Districts. Each District contains a Federal Land Bank (FLB), a Federal Intermediate Credit Bank (FICB) and a Bank for Cooperatives (BC). Each District also contains a number of Federal Land Bank Associations (FLBA) and Production Credit Associations (PCA). Each District has a board of directors elected by bank stockholders.

Each banking institution within the System operates under a board of directors which is responsible for the institution's management. 12 U.S.C. §§ 2012, 2033, 2072, 2093, 2122 and 2227. Each institution is a citizen of the state in which its principal office is located, 12 U.S.C. § 2258, and has the authority to make loans without day-to-day supervision by the FCA. 12 U.S.C. §§ 2012(6), 2072(6), 2093(13). System institutions are not considered federal agencies. *See* S.Rep. No. 350, 86th Cong., 1st Sess. 8 (1959) (system institutions, unlike federal agencies, cannot assert the defense of sovereign immunity).

The FLBs make loans and provide technical assistance and financially related services to eligible borrowers. 12 U.S.C. § 2012(6). FLB loans are made through borrower-owned FLBAs. *See, generally,* 12 U.S.C. § 2031 *et seq.* Every FLB borrower must own stock in a local FLBA in an amount not less than five and not more than ten percent of the face amount of the loan and determined by the FLB. 12 U.S.C. § 2034. The FICBs also make agricultural loans to PCAs and other financial institutions. 12 U.S.C. § 2074. Each PCA borrower is also required to own stock or participation certificates in the PCA.

The Federal Reserve System is the nation's central bank, consisting of (a) a seven-member Board of Governors, (b) twelve regional Federal Reserve Banks, (c) the Federal Open Market Committee, (d) the Federal Advisory Council, and (e) approximately 5,500 privately-owned commercial banks. The Federal Reserve System formulates and regulates monetary policy. The Federal Reserve Board is authorized to review the interest rate charged by member banks, 12 U.S.C. § 357. The Board also sets the amount of reserve that member banks must maintain against deposits. 12 U.S.C. § 461. Thus, these powers enable the Federal Reserve Board to regulate the ability of member banks to lend money.

The above discussion demonstrates that the nonfederal defendant lending institutions are not members of the Federal Reserve System. Instead, they are members of the Farm Credit System and are not commercial banks. The Federal Reserve Board has no authority over the FCA or its member institutions.

Plaintiffs' complaint contains ten counts. Both the federal and nonfederal defendants raise similar arguments in support of their motions to dismiss. The Court will consider each count separately. First, however, the Court will address defendants' contentions that plaintiffs lack standing to bring this action.

## DISCUSSION

### A. Standing.

■ In *Valley Forge Christian College v. Americans United for Separation of*

*Church & State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), the Supreme Court summarized its prior holdings on the concept of standing. The court noted that "standing" involves both constitutional and practical considerations. *Id.* at 472, 102 S.Ct. at 758. On the constitutional side of the ledger, the court held that Article III requires the suing party to show that he personally has suffered an actual or threatened injury stemming from the defendants' conduct. *Id.* at 472, 102 S.Ct. at 758. A plaintiff must also demonstrate that his injury "fairly can be traced" to the defendants' actions, and a favorable decision is likely to redress his injury. *Id.* The *Valley Forge* decision also delineated practical factors which a court must consider in addition to Article III considerations:

"The plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. [490], at 499 [95 S.Ct. 2197, at 2205, 45 L.Ed.2d 343 (1975)]. In addition, even when the plaintiff has alleged redressable injuries sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating "abstract questions of wide public significance" which amount to "generalized grievances", pervasively shared and most appropriately addressed in the representative branches. *Id.,* at 499–500 [95 S.Ct. at 2205–06]. Finally, the Court has required that the plaintiff's complaint fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Org. v. Camp,* 397 U.S. 150, 153 [90 S.Ct. 827, 830, 25 L.Ed.2d 184] (1970).

*Id.* at 474–75, 102 S.Ct. at 759–60 (footnotes omitted).

The plaintiffs in the case at bar allege that the federal defendants manipulated the economy through regulation of interest rates, forcing plaintiffs' farms into foreclosure. Plaintiffs also allege that all defendants violated the congressional mandate of the Farm Credit Act of 1971, 12 U.S.C. § 2001 *et seq.* The Court notes that

plaintiffs' complaint is uncannily similar to the complaint dismissed in *Bowling v. Block,* 602 F.Supp. 667 (S.D.Ohio 1985); *aff'd,* 785 F.2d 556 (6th Cir.), *cert. denied,* 479 U.S. ——, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986). In that case, the Court found:

An all-out assault on the operation of the Farm Credit System should not be waged in the courts, but at the congressional level. Many of the complaints plaintiffs have against the defendants involve duties and responsibilities for which the Farm Credit Act, and therefore, Congress, have specifically provided.... Further, many of the acts of the administration of which plaintiffs apparently complain were authorized by the broad discretionary powers granted by the Farm Credit Act. This court may not review such acts even if it believed review were justified.

*Id.* at 674. Thus, while plaintiffs may arguably meet some standing requirements, this Court is persuaded that their complaint constitutes a "generalized grievance" better resolved in the legislative rather than the judicial arena. The Court will now address the specific arguments raised regarding each count of plaintiffs' complaint, in the interest of providing a complete record.

### Count I

In Count I, plaintiffs argue that the credit extended to them was unconstitutionally created. Plaintiffs contend that the defendants' actions in making these loans available constitutes the creation of money, which is unconstitutional. Plaintiffs point to Art. I, Sec. 8., Cl. 5 of the United States Constitution, which holds that Congress alone has the authority "to coin money [and] regulate the value thereof...." The Court finds the loans to plaintiffs constitute the lending of money and creation of a debt, rather than the creation of money. Therefore, Count I fails to state a claim for which relief may be granted.

### Count II

Count II alleges that the defendants have deprived plaintiffs of their civil rights

in property ownership and their right to pursue a common calling by their chosen livelihood, the American family farm. Plaintiffs claim that their civil rights were violated by defendants' utilizing the Iowa state foreclosure laws and in declaring themselves insecure on the loans to plaintiffs. Count II alleges violations of 42 U.S.C. §§ 1983 and 1985. However, use of state law to foreclose is not sufficient to allege a claim under § 1983. *See Mellor v. Matter No. CV 82–L–632* (D.Neb. June 29, 1983) (copy attached to this order). Therefore, Count II also fails to state a claim for which relief can be granted.

### Count III

■ Count III alleges that defendants have violated the congressional declaration of policy in 7 U.S.C. § 2266 to foster and encourage family farms. That statute provides in part as follows:

> Congress reaffirms the historical policy of the United States to foster and encourage the family farm system of agricultural in this country. Congress believes that the maintenance of the family farm system of agriculture is essential to the social well-being of the Nation and the competitive production of adequate supplies of food and fiber. Congress further believes that any significant expansion of nonfamily owned large-scale corporate farming enterprises will be detrimental to the national welfare. It is neither the policy nor the intent of Congress that agricultural and agriculture-related programs be administered exclusively for family farm operations, but it is the policy and the express intent of Congress that no such program be administered in a manner that will place the family farm operation at an unfair economic disadvantage.

Plaintiffs fail to specifically explain how defendants violated this statute. The statute does not expressly provide for its private enforcement. Plaintiffs apparently contend that § 2266(a) contains an implied right of action. Therefore, the Court must consider whether an implied private right of action exists. In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set forth four factors to consider in making this determination:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," that is, does the statute create a federal right in favor of the plaintiffs? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally regulated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (emphasis in original, citations omitted).

The plaintiffs obviously meet the first factor of the *Cort* test. As for the second factor, this Court has searched the legislative history in vain and has been unable to find any explicit or implicit indication that Congress intended to create a remedy under § 2266. *See* Legislative History of Pub.L. 97–98, 1981 U.S.Code Cong. & Adm. News, p. 1965; Pub.L. 99–198, 1985 U.S. Code Cong. & Adm.News, p. 1103. Section 2266 appears to be nothing more than a "congressional reaffirmation of policy," not an invitation for private lawsuits. Also, the Court does not believe that implying such a remedy is "consistent with the underlying purposes of the legislative scheme". The statute requires the Secretary of Agriculture to file an annual report informing Congress of the status of the family farm. Thus, a mere reading of the Act itself demonstrates that Congress desired nothing more than an assessment of the effect of federal policies and programs on the family farm. The Court concludes that 7 U.S.C. § 2266 does not create an implied private cause of action, and Count III therefore fails to state a claim for which relief may be granted.

### Count IV

■ In Count IV, plaintiffs allege that they have been injured by defendants' vio-

lation of the Farm Credit Act, 12 U.S.C. § 2001 *et seq.* However, as with 7 U.S.C. § 2266, the Farm Credit Act does not expressly provide for private enforcement. At least three other courts have held that there is no private right of action under this statute. *Bowling v. Block, supra,* 602 F.Supp. at 670–71; *Apple v. Miami Valley PCA,* 614 F.Supp. 119, 121–22 (S.D.Ohio 1985); *Birbeck v. Southern New England PCA,* 606 F.Supp. 1030, 1042 (D.Conn. 1985). This Court is persuaded that these decisions correctly apply the four-factor *Cort* test in determining that no private right of action exists in the Farm Credit Act. Therefore, Count IV fails to state a cause of action for which relief can be granted.

### Count V

In Count V, plaintiffs allege violations of the Securities Act, 15 U.S.C. § 77a *et seq.* Specifically, plaintiffs contend that defendants failed to issue a prospectus when plaintiffs obtained the "stock" they were required to purchase by the FLBAs or the PCAs. Plaintiffs also allege that they have not received dividends on their "stock". Finally, plaintiffs contend that the stock issued by the FLBAs and the PCAs constitutes an additional finance charge on their loans, and that defendants failed to disclose these charges. The Court will address each of these allegations in turn.

 The mere fact that an instrument is labeled "stock" is not sufficient to invoke application of the federal securities laws. *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 848–49, 95 S.Ct. 2051, 2058–59, 44 L.Ed.2d 621 (1975). The Securities Act of 1933 provides that securities issued by "any person controlled or supervised by and acting as an instrumentality of the Government of the United States" are exempt from the Act's provisions. Indeed, this Court has already held that Federal Land Bank Association stock is exempt under the federal securities acts. *Dau v. Federal Land Bank of Omaha,* C 84–4167 (N.D.Iowa June 22, 1985). The federal court in Nebraska has also so held regarding PCAs. *Kicken v. Valentine PCA,* 628

F.Supp. 1008 (D.Neb.), *aff'd without published opinion,* 754 F.2d 378 (8th Cir.1984).

 As for declaration of dividends, the FCA must approve such action for a Federal Land Bank. 12 U.S.C. § 2051. Before a Production Credit Association can declare a dividend, it must obtain the approval of its supervising bank in accordance with FCA regulations. 12 U.S.C. § 2094(i). It is hornbook law that a declaration of dividends is discretionary with the board of directors. 19 Am.Jur.2d, Corporations, § 95; 18 C.J.S., Corporations, § 473. Unless this exercise of discretion is tainted by bad faith or willful abuse, a court may not interfere. *Greene County Nat. Farm Loan Assoc. v. Federal Land Bank,* 57 F.Supp. 783, 790 (W.D.Ky.1944). As to the allegation that the stock constitutes an additional finance charge, the Court notes that the stock may be retired upon full payment of the loan or applied to the loan upon default. 12 U.S.C. §§ 2034, 2054 and 2094. Thus, Count V fails to state a claim for which relief can be granted.

### Count VI

Count VI is based on the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.* In their brief and at the hearing, plaintiffs stated that they were withdrawing this claim. Therefore, the Court dismisses Count VI.

### Count VII

 In Count VII, plaintiffs allege that the federal defendants breached their duty to maintain stable economic conditions and to foster and encourage the family farm through intentional manipulation of interest rates. However, it is well settled that the United States cannot be sued without its consent. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Nothing in the Farm Credit Act, Civil Rights Act, the Agriculture Act or the Securities Act expressly waives sovereign immunity. While the Federal Tort Claims Act, 28 U.S.C. § 2674 *et seq.,* does provide for a limited waiver of sovereign immunity, a reading of the Acts' provisions demonstrates that it is inapplicable here. Section 2680(a) provides that the United States has

not waived its sovereign immunity for claims based upon "the exercise or performance or the failure to exercise or perform a discretionary function...." This Court finds that plaintiffs' claim that the federal defendants "manipulated interest rates" falls squarely within this discretionary function exception, as it involves decision-making at the policy or planning rather than the operational level. *Dalehite v. United States*, 346 U.S. 15, 42, 73 S.Ct. 956, 971, 97 L.Ed. 1427 (1953). Also, the Court notes that 28 U.S.C. § 2680(n) does not waive sovereign immunity for:

> Any claim arising from the activities of a Federal Land Bank, a Federal Intermediate Credit Bank, or a Bank for Cooperatives.

Thus, Count VII fails to state a claim for which relief can be granted.

### Count VIII

In Count VIII, plaintiffs allege violations of various farm credit regulations. The Court has applied the four-factor *Cort* test and finds as it did regarding the Farm Credit Act, that the regulations do not provide for an express private right of action, nor can one be implied. Therefore, Count VIII must also be dismissed.

### Count IX

■ In Count IX, plaintiffs allege that defendants are not qualified to do business as foreign corporations as required by Iowa Code §§ 496A.2, 496A.103 and 496A.120. Plaintiffs conclude that, therefore, Iowa courts lack jurisdiction over suits regarding defendants' loans, including foreclosure actions. Iowa Code § 496A.120 states that no foreign corporation transacting business in the state without a certificate of authority may file suit in state court. Iowa Code § 496A.103 provides that a foreign corporation lacks the right to transact business in the state until it obtains a certificate of authority. However, § 496A.103 also provides that the following activities do not constitute "transacting business":

> (1) Creating as a lender, or acquiring indebtedness or mortgages or other

security interests in real or personal property, and

> (2) Collecting debts or enforcing any property rights in property securing such debts.

Therefore, the Iowa Business Corporations Act does not require defendants to obtain certificates of authority, and Count IX must be dismissed.

### Count X

In Count X, plaintiffs allege that defendants breached their fiduciary duty allegedly created by defendants acting as financial advisers to plaintiffs. The Eighth Circuit has previously held that the federal common law does not establish a fiduciary duty between a Production Credit Association and farmers. *Boyster v. Roden*, 628 F.2d 1121, 1125 (8th Cir.1980). The *Boyster* court also held that courts must look to state law in determining whether a fiduciary duty exists. *Id.*

■ In Iowa, a debtor-credit relationship between a borrower and his lender does not ordinarily also create a fiduciary duty. *See Kurth v. Van Horn*, 380 N.W.2d 693, 696 (Iowa 1986); *Klatt v. First State Bank*, 206 Iowa 252, 220 N.W. 318, 320 (1928). Even though the *Kurth* court held that circumstances creating a fiduciary duty are so diverse that such a relationship must be examined on a case-by-case basis, plaintiffs' claim still fails. Plaintiffs allege that their loans have been foreclosed. In *Harrington v. Polk Co. Fed. S. & L. Ass'n*, 196 N.W.2d 543, 546 (Iowa 1972), the Iowa Supreme Court held that a claim by borrowers asserting wrongful conduct and fraudulent practices against a savings and loan was a compulsory counterclaim to an earlier suit by the savings and loan for foreclosure on a mortgage, and failure to assert the same as a counterclaim in the foreclosure action precluded the bringing of a later separate action for damages. Therefore, as plaintiffs allege that their property has already been foreclosed upon, they should have raised their breach-of-fiduciary-duty claim in the state foreclosure action. Therefore,

plaintiffs fail to state a claim for relief in Count X.

The Court recognizes that plaintiffs' complaint requests injunctive relief barring foreclosures and requiring defendants to abide by the Farm Credit Act Administration regulations. Inasmuch as plaintiffs' complaint overall fails to state a claim for which relief can be granted, the Court also denies plaintiffs' motion for injunctive relief.

## CONCLUSION

This Court is not insensitive nor unaware to the plight of the American family farmer. Its docket is full of actions which clearly demonstrate the problems. Nor does it disagree with plaintiffs' assertions that economic trends and policies have recently strapped many farmers to the breaking point. Though this Court sympathizes with plaintiffs' circumstances, it nevertheless is compelled to dismiss the complaint, as plaintiffs' claims are the kind that should be addressed by the legislative rather than the judicial branch of our government.

IT IS THEREFORE ORDERED that the nonfederal defendants' motion to dismiss is hereby granted.

IT IS FURTHER ORDERED that the federal defendants' motion to dismiss is hereby granted.

## APPENDIX

MURRAY D. MELLOR and JEAN
MELLOR, Plaintiffs,

vs.

WILLIAM S. MATTERN, et
al., Defendants.

CV82-L-631

IN THE UNITED STATES
DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

### MEMORANDUM

The defendants have filed a motion to dismiss, filing 5, on the grounds that this court lacks jurisdiction over the subject matter and that the complaint fails to state a claim upon which relief can be granted.

This is an action brought under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 seeking injunctive, declaratory, and monetary relief for actions allegedly taken by the defendants with respect to the management and attempted collection of a loan outstanding between the Production Credit Association of O'Neill, Nebraska, and the plaintiffs. The complaint admits that the plaintiffs have fallen behind in their payments on the loan but alleges that the defendants, as officers of the Production Credit Association, have failed to follow a federal policy of forebearance in collection of such debts, as set out in 12 C.F.R. § 614.4510.

The defendants challenge the plaintiff's failure to cite 28 U.S.C. § 1343[ (a) ](3)—the jurisdictional counterpart of § 1983—in the complaint as fatal to the jurisdiction over that count. The true deficiency with respect to this action is that § 1983 and its jurisdictional counterpart do not apply to the facts as pleaded. Section 1983 requires a deprivation of protected rights under color of state law. The complaint itself makes no allegations of such a deprivation; only federal law is referenced and no action by state officers is alleged. Even if the collection efforts are taking place in state court, as the plaintiff alleges in his brief, that in and of itself does not provide a basis for a § 1983 action. The use of constitutionally permissible state collection remedies in state court does not render a case cognizable under § 1983. See *Lugar v. Edmundson [Edmondson] Oil Co.* [457 U.S. 922, 942, 102 S.Ct. 2744, 2756, 73 L.Ed.2d 482], 50 U.S.L.W. 4850, 4854–4855 (1982). The plaintiffs have made no allegation that the state collection remedies used are constitutionally infirm. Accordingly, no basis has been shown for bringing this action under § 1983.

The defendants also challenge the plaintiffs' assertion of jurisdiction under federal question jurisdiction pursuant to 28 U.S.C. § 1331. That section provides for jurisdiction in this court for civil actions "arising under the Constitution, laws, or treaties of the United States." But there is a colorable basis for jurisdiction. *Schlake v Beatrice Production Credit Association*, 596 F.2d 278 (C.A. 8th Cir.1979).

However, the plaintiffs have not demonstrated that the federal statutes and regu-

lations provide a private right of action to them. The forebearance policy contained in 12 C.F.R. § 614.4510(d)(1) does not create rights in borrowers under the program to seek enforcement of the directive to develop policy. Rather, the rights of enforcement would appear to lie in the hands of the board of directors and possibly the holders of stock and participation certificates given the ownership and control provided for the production credit association. See 12 U.S.C. § 2091 et seq.

The plaintiffs have made no allegations to the effect that they are entitled to bring an action either as a director or via an ownership interest in a derivative action. Accordingly, they have not pleaded any right arising under the Constitution, laws or treaties of the United States and jurisdiction does not lie under § 1331. The motion to dismiss for lack of subject matter jurisdiction will be granted. See *Schlake,* supra.

Dated June 28, 1983.

BY THE COURT
/s/ Warren K. Urbom
Chief Judge