[No. A041277. First Dist., Div. Five. May 25, 1989.]

CALIFORNIA AGRARIAN ACTION PROJECT, INC., et al.,
Plaintiffs and Respondents, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Appellants;
CALIFORNIA STATE GRANGE, Intervener and Appellant.

COUNSEL

Peter W. Davis, James C. Martin, Kathy M. Banke, Crosby, Heafy, Roach & May, James E. Holst, George L. Marchand, Gary Morrison, Christine Helwick and Shelly W. Drake for Defendants and Appellants.

Joseph P. Russoniello, United States Attorney, John R. Bolton, Assistant United States Attorney, John F. Cordes, Marleigh D. Dover and Carl P. Rose as Amici Curiae on behalf of Defendants and Appellants.

Ronald A. Zumbrun, Anthony T. Caso and Jonathan M. Coupal for Intervener and Appellant.

Ralph Santiago Abascal, William G. Hoerger, Armando M. Menocal III and Lois Salisbury for Plaintiffs and Respondents.

OPINION

LOW, P. J.—We reverse the judgment declaring the University of California in violation of the federal Hatch Act of 1887 (7 U.S.C. § 361a et seq.). The University of California is not required to establish an administrative process to ensure that Hatch Act funds for agricultural research are expended so as to give primary consideration to the needs of the small family farmer.

The California Agrarian Action Project[1] and 19 farm workers (hereafter collectively referred to as the Project) sued the regents and individuals affiliated with the University of California (hereafter collectively referred to as the University) alleging a violation of state and federal laws, including the Hatch Act. The Project's complaint alleged that the University's agricultural research program emphasized farm mechanization, which favored the interests of large agricultural business, to the detriment of the small farmer and consumer. Much of the litigation has been disposed of in pretrial proceedings and is not before us on appeal. We are concerned only with the Project's third cause of action which alleged the University had failed to act in accordance with the purposes for which the Hatch Act was promulgated. The Project asserted that the University's mechanization research projects have harmed the interests of small family farmers, laborers, consumers and California's rural population. The trial court never made a finding that Hatch Act funding was used to conduct research that was injurious to small farmers or any other group. Nevertheless, after receiving factual stipulations, judgment was awarded to the Project on this cause of action; and the University was ordered to "establish and supervise an administrative process" to ensure that Hatch Act funds "are expended in a manner which affords consideration for each of the legislatively intended beneficiaries, with primary consideration for the small family farmer." The University acknowledges that such an administrative process does not presently exist.

■ We must determine whether Congress has required such a review process in the funding of the University's agricultural research. ■ "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." (*Chevron U. S. A.* v. *Natural Res. Def. Council* (1984) 467 U.S. 837, 842-843 [81 L.Ed.2d 694, 703, 104 S.Ct. 2778], fns. omitted.) The type of procedure ordered by the trial court is not required by the express terms of the statute nor is it part of the administrative construction of the statute by the United States Department of Agriculture. The term "small family farmer" is not found in the Hatch Act or in its legislative history. The Project maintains, however, that notwithstanding this lack of an express provision, the require-

---

[1] The California Agrarian Action Project is self-described as a project to aid small family farmers, promote farmers' markets and to "provide relief to the poor, distressed and disadvantaged people of rural California."

ment of such a procedure is implicit within the broad policy objectives of the Hatch Act.

■■■ The Hatch Act provides funding to support agricultural research conducted at state agricultural experiment stations. The University of California has been designated the California state agricultural experiment station and receives federal appropriations annually. The university-sponsored agricultural experiment station has three major branches at its campuses in Berkeley, Davis and Riverside. During the course of this litigation, the experiment station had from 1,000 to 1,400 formally approved research projects underway. Federal appropriations, including those pursuant to the Hatch Act, comprise 3 percent of the station's total budget.

The Hatch Act seeks "to promote the efficient production, marketing, distribution, and utilization of products of the farm," to promote "a sound and prosperous agriculture and rural life," and "to assure agriculture a position in research equal to that of industry, which will aid in maintaining an equitable balance between agriculture and other segments of our economy." (7 U.S.C. § 361b.) To serve those purposes, the act authorizes funds to assist state agricultural experiment station research "bearing directly on and contributing to the establishment and maintenance of a permanent and effective agricultural industry of the United States," including "researches basic to the problems of agriculture in its broadest aspects, and such investigations as have for their purpose the development and improvement of the rural home and rural life and the maximum contribution by agriculture to the welfare of the consumer . . . ." (7 U.S.C. § 361b.) Congress did not expressly state a preference for agricultural research that would benefit the small family farm.

The Hatch Act is administered by the Department of Agriculture, which makes grants pursuant to the formula prescribed by the act to state agricultural experiment stations to carry out this research. (7 U.S.C. §§ 361c(b)(1), 361c(c)1, 361c(c)2.) The Secretary of Agriculture has the authority to approve projects and to determine whether federal funds have been properly used. (7 U.S.C. § 361g.) The Secretary is also directed to "furnish such advice and assistance as will best promote the [congressional] purposes" and "from time to time to indicate such lines of inquiry as to him seem most important." (7 U.S.C. § 361g.)

The Secretary has issued an administrative manual which establishes the procedures for obtaining approval of research projects, of which we take judicial notice. (Evid. Code, § 452.) The manual outlines the permissible research under the Hatch Act, including: "research on all aspects of

agriculture, including soil and water conservation and use; plant and animal production, protection, and health; processing, distributing, marketing, and utilization of food and agricultural products; forestry, including range management and range products, multiple use of forest and rangelands, and urban forestry; aquaculture; home economics, including human nutrition and family life; and rural and community development." The manual gives the state agricultural experiment stations the primary responsibility for determining the need for and the scientific feasibility of the projects proposed. It directs the director of such stations to develop a procedure, to be approved by the department, for project documentation, scientific review, and project selection. The manual does *not* require agricultural experiment stations to develop an administrative procedure to consider whether congressionally intended beneficiaries will be favorably or unfavorably served by its agricultural research projects, nor does it require that primary consideration be given to the interests of the small family farmer.

The University has developed a procedure under which each proposed research project is reviewed and approved at several levels of administration. The University does not claim to have an administrative process designed to assess the consequences of its research on any particular group. The University's review procedures have received approval by the Department of Agriculture. After a project is reviewed and approved for scientific merit within the University, a written project proposal is reviewed by the Department of Agriculture for compliance with the Hatch Act. All agricultural research conducted by the University receiving Hatch Act funding was reviewed both within the University and by the Department of Agriculture, and each determined the research was consistent with the purposes of the Hatch Act.

Nothing in the legislation or in its administrative interpretation by the agency charged with its implementation requires an administrative process which gives primary consideration to the small family farmer. Nevertheless, the Project contends that the Secretary's interpretation and the University's guidelines are at variance with congressional directives found in several other statutes which foster and encourage the family farm system of agriculture in this country. Specifically, the Project relies on expressions of concern for the small farmer in the statutory terms and legislative history of the Morrill Act of 1862 (7 U.S.C. § 301 et seq.); the Smith-Lever Act of 1914 (7 U.S.C. § 341 et seq.); and the National Agricultural Research, Extension, and Teaching Policy Act of 1977 (7 U.S.C. § 3101 et seq.). The Project argues that these enactments should be read in pari materia with the Hatch Act because together they constitute the agricultural policy of the United States; and, when read together, Congress intended the University to

conduct its research under the Hatch Act to primarily benefit the small family farmer.

■ The Project principally relies on a provision of the Food and Agriculture Act of 1977 which sets forth congressional policy applicable to federal agricultural programs generally. That section reads: "It is neither the policy nor the intent of Congress that agricultural and agriculture-related programs be administered exclusively for family farm operations, but it is the policy and the express intent of Congress that no such program be administered in a manner that will place the family farm operation at an unfair economic disadvantage." (7 U.S.C. § 2266(a).) The Project argues that this congressional declaration of policy contemplates the need for some type of administrative process to ensure that Hatch Act research be conducted in such a way as to primarily benefit the small family farmer. There has been no effort to legislatively implement this section by imposing additional procedural requirements on existing agricultural research programs. The statute itself simply requires the Secretary of Agriculture to submit to Congress, on an annual basis, a written report (7 U.S.C. § 2266(b)(1)) which includes "information on how existing agricultural and agriculture-related programs are being administered to enhance and strengthen the family farm system of agriculture in the United States . . . ." (7 U.S.C. § 2266(b)(2)(A).) This report must also contain "identification and analysis of new food and agricultural production and processing technological developments . . . and evaluation of the potential effect of such developments on—[¶] (i) the economic structure of the family farm system." (7 U.S.C. § 2266(b)(2)(C)(i).) "Thus, a mere reading of the Act itself demonstrates that Congress desired nothing more than an assessment of the effect of federal policies and programs on the family farm." (*Kolb* v. *Naylor* (N.D.Iowa 1987) 658 F.Supp. 520, 524 [7 U.S.C. § 2266 does not create an implied private cause of action].)

■ Congress enacted the Rural Development and Small Farm Research and Education Act (7 U.S.C. § 2661 et seq.) which endeavors to "expand small farm research and extend training and technical assistance to small farm families . . . ." (7 U.S.C. § 2661(a)(4).) To carry out this goal, the Secretary of Agriculture is authorized to conduct small farm research programs in coordination with colleges and universities. "Small farm research programs" consist of programs "to develop new approaches for initiating and upgrading small farm operations through management techniques . . . to develop new enterprises that can use labor, skills, or natural resources available to the small farm family; or that will help to increase the quality and availability of services and facilities needed by the small farm family." (7 U.S.C. § 2662(c).) Therefore, Congress has chosen to enact separate

legislation to foster agricultural research designed to address the special needs of the small farmer rather than narrowing the broad scope of permissible agricultural research under programs such as the Hatch Act.

The University argues that research projects should be selected solely on the basis of scientific merit; and that if it is required to design research projects to benefit small farmers or other special interest groups, academic freedom would be paralyzed. The Project argues that the intent and purposes of the Hatch Act are being ignored by the University, and a procedure to ensure that research benefits the small family farmer would inevitably inure to the benefit of agriculture in this country. The judiciary is not the forum to debate national farm policy or to develop administrative procedures for enforcing the Hatch Act. ■ Because the Hatch Act is silent as to the necessity for such a procedure, our task is to determine whether the agency's construction of the statute is a "reasonable policy choice for the agency to make." (*Chevron U.S.A.* v. *Natural Res. Def. Council, supra,* 467 U.S. at p. 845 [81 L.Ed.2d at p. 704].)

■ In *Vermont Yankee Nuclear Power Corp.* v. *NRDC* (1978) 435 U.S. 519 [55 L.Ed.2d 460, 98 S.Ct. 1197], the Supreme Court stated that "[a]bsent constitutional constraints or extremely compelling circumstances the 'administrative agencies "should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties."' [Citation.]" (At p. 543 [55 L.Ed.2d at p. 479].) "[I]f courts continually review agency proceedings to determine whether the agency employed procedures which were, in the court's opinion, perfectly tailored to reach what the court perceives to be the 'best' or 'correct' result, judicial review would be totally unpredictable. And the agencies, operating under this vague injunction to employ the 'best' procedures and facing the threat of reversal if they did not, would undoubtedly adopt full adjudicatory procedures in every instance. Not only would this totally disrupt the statutory scheme . . ., but all the inherent advantages of informal rulemaking would be totally lost." (At pp. 546-547 [55 L.Ed.2d at p. 481], fn. omitted.)

■ We conclude that nothing in the Hatch Act or the regulatory mandate under which the University operates its agricultural experiment station requires the University to develop a procedure to see that funds authorized by the Hatch Act are "expended in a manner which affords consideration for each of the legislatively intended beneficiaries, with primary consideration for the small family farmer."

The judgment is reversed.

King, J., and Haning, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 6, 1989.